950 So.2d 1113 (2007)
Cathy P. APPERSON and Michael D. Pierce, Appellants
v.
John L. WHITE and Suzanne B. White, Appellees.
No. 2005-CA-01516-COA.
Court of Appeals of Mississippi.
March 6, 2007.
*1115 Steven D. Settlemires, Philadelphia, attorney for appellants.
Marvin E. Wiggins, Jr., attorney for appellees.
Before MYERS, P.J., CHANDLER and ROBERTS, JJ.
MYERS, P.J., for the Court.
¶ 1. Cathy P. Apperson and Michael D. Pierce appeal the judgment of the Chancery Court of Kemper County which awarded John and Suzanne White title to a disputed 8.2 acre tract of land by virtue of adverse possession. Apperson's and Pierce's appeal raises the following two issues:
I. WHETHER THE CHANCELLOR ERRED IN DETERMINING THAT THE WHITES HAD ACQUIRED TITLE TO THE DISPUTED PROPERTY BY ADVERSE POSSESSION?
II. WHETHER THE CHANCELLOR ERRED BY FAILING TO CONSIDER TESTIMONY AND OTHER EVIDENCE PRESENTED AT TRIAL ON BEHALF OF APPERSON AND PIERCE?
¶ 2. Finding no error, we affirm the judgment of the Chancery Court of Kemper County.

STATEMENT OF THE FACTS
¶ 3. The parties in this case are adjoining landowners in Kemper County, Mississippi. Pierce's property is located immediately adjacent to Apperson's property, and Apperson's property is located immediately adjacent to the Whites' property. No overlapping of the legal descriptions of the parcels of property owned by the respective parties exists, and it is clear from the descriptions that, prior to the Whites' adverse possession, Apperson and Pierce shared legal title to the disputed parcel. In fact, no dispute over the boundary line arose between the parties until Apperson and Pierce discovered that the Whites had clear-cut timber up to an old barbed-wire fence running at a southwest to northeast diagonal across the southeast corner of the parcel of property owned by Apperson, and extending marginally into the southeast corner of the parcel of property owned by Pierce. The Whites clear-cut the timber from the disputed parcel from 1995 until 1996, but their actions went undiscovered until September 2001, when Apperson consulted a timber cruiser about clearing her property. After the timber cruiser informed Apperson that the trees had already been removed from the parcel now in dispute, she obtained a land survey from Tom Turner, in January 2002, showing an encroachment of approximately 8.2 acres. Apperson, joined by her brother and adjoining landowner Pierce, then commenced this action on September 17, 2002, by filing a complaint to quiet title against John and Suzanne White. The Whites defended the action by asserting adverse possession over the disputed property. After reviewing the land descriptions and chains of title, studying the survey commissioned by Apperson and ariel photographs of the property, visiting the property in question, and hearing three days of testimony on behalf of the parties, the chancellor issued a written opinion dated June 7, 2005, wherein he found the Whites to have brought forth sufficient evidence to support their claim of adverse possession, and accordingly awarded the Whites title to the 8.2 acre parcel of land.

*1116 LEGAL ANALYSIS
I. WHETHER THE CHANCELLOR ERRED IN DETERMINING THAT THE WHITES HAD ACQUIRED TITLE TO THE DISPUTED PROPERTY BY ADVERSE POSSESSION?
¶ 4. Apperson and Pierce argue that the Whites failed to meet their burden of proof on the elements of adverse possession and that the chancellor erred in awarding the Whites title to the disputed property. This assignment of error is essentially a challenge to the chancellor's findings of fact and conclusions of law, and urges this Court to find the chancellor's judgment in error. However, our appellate review of the chancellor's decision is limited. "This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." Sanderson v. Sanderson, 824 So.2d 623, 625-26, (¶ 18) (Miss. 2002).
¶ 5. One may acquire property legally titled in another through an action to quiet title and after having established by clear and convincing evidence the elements of adverse possession, found in Mississippi Code Annotated section 15-1-13 (Rev. 2003)[1] and articulated by our supreme court in Rice v. Pritchard, 611 So.2d 869, 871 (Miss.1992), before a chancery court of proper jurisdiction. The Rice court adopted a six-part test for determining whether adverse possession has occurred, and that test has been applied by this Court as follows: "for possession to be adverse it must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." Walker v. Murphree, 722 So.2d 1277, 1281(¶ 16) (Miss.Ct.App.1998) (citing Rice, 611 So.2d at 871).
1. Under Claim of Ownership
¶ 6. Apperson and Pierce first challenge the evidence in support of the Whites' claim of ownership over the disputed parcel. The primary evidence Apperson and Pierce point to in support of this challenge is that Apperson paid the property taxes on the disputed parcel, Apperson's son occasionally hunted on the disputed parcel, and that Apperson's and Pierce's father had periodically raised cattle and thinned timber on the disputed parcel. First, the payment of property taxes is but one factor for the chancellor to consider, and is not conclusive of ownership. Buford v. Logue, 832 So.2d 594, 602(¶ 22) (Miss.Ct.App.2002). Second, in Apperson's and Pierce's own brief, they recognize that sporadic or occasional pasturing of cows and cutting of timber is insufficient to support a claim of adverse possession. Davis v. Clement, 468 So.2d 58, 63 (Miss.1985). Finally, while the testimony presented on behalf of Apperson and Pierce may show an occasional use of the property by Apperson and Pierce, or their predecessors in interest, it does not address the Whites' use of the property.
¶ 7. The deficiency in Apperson's and Pierce's argument is that it focuses on Apperson's and Pierce's actions of dominion and control over the property, rather than evaluating whether the actions of the Whites, as adverse possessors, were sufficient to provide notice of the Whites' claim *1117 of ownership over the property. The essential question the chancellor was to answer was not whether the possessory acts of Apperson and Pierce were sufficient to provide notice of a claim of ownership, but rather, whether the Whites' possessory acts were sufficient to "fly their flag over the property" and put Apperson and Pierce on notice that the land was being held under an adverse claim of ownership. Walker, 722 So.2d at 1281(¶ 16). The possessory acts of Apperson and Pierce, as title owners of the property, are immaterial to this analysis. Thus, our review focuses on the possessory acts of John and Suzanne White, if any, in an attempt to determine whether Apperson and Pierce were sufficiently placed on notice of the Whites' claim of ownership over the disputed parcel.
¶ 8. When determining whether the Whites undertook possessory acts sufficient to support a claim of adverse possession, the chancellor must look to the quality and not the quantity of the acts indicative of possession. Id. "Possessory acts necessary to establish a claim of adverse possession may vary with the characteristics of the land," and "adverse possession of `wild' or unimproved lands may be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands." Id. (citing Kayser v. Dixon, 309 So.2d 526, 529 (Miss. 1975)). At trial, Apperson testified that she considered the disputed parcel "wild land" and that she had not visited the parcel in six or seven years. Therefore, the quantum of proof necessary for the Whites to establish adverse possession over the disputed parcel is measurably lower than had the property been improved or developed.
¶ 9. The most substantial evidence of a possessory act performed by the Whites sufficient to "fly their flag over the property" was the ample testimony presented that the Whites' predecessor in interest had constructed a barbed-wire fence over sixty years ago, and that the fence had been maintained as the property line ever since. The fence, running at a southwest by northeast diagonal, is clearly marked on the survey commissioned by Apperson. At the hearing, Apperson testified to having no knowledge of the fence, and Pierce claimed that the fence was a part of a series of cross-fences constructed by his father for the raising of cattle. However, on the chancellor's visit to the property he observed no evidence of a system of cross-fences on the disputed parcel. In contrast, proof of the longevity of the fence's existence could be found in the barbed-wire having grown deeply into the trees at various points, a fact consistent with the testimony of the elder Whites. Mathews v. Hale, 767 So.2d 231, 234(¶ 9) (Miss.Ct.App. 2000) (upheld chancellor's determination of a boundary line proved by a tree having grown into an "old fence"). Our review of the record on the issue of the fence reveals that the chancellor weighed the testimony of the elder Whites against that of Pierce, and found the Whites to be more credible on this issue. Since we find no manifest error with the chancellor's weighing of this testimony, we must accept the chancellor's finding as true, and proceed with an understanding that the fence was constructed by the Whites. This Court "has long recognized that the existence of an old fence, including disputed land in with the land of the claimant, was strong evidence of the elements required to prove adverse possession." Roebuck v. Massey, 741 So.2d 375, 389(¶ 42) (Miss.Ct.App.1999). Accordingly, we find the evidence that the Whites constructed the barbed-wire fence encompassing the disputed property some sixty years ago compelling evidence of adverse possession.
*1118 ¶ 10. Additional evidence of possessory acts over the disputed parcel brought forth on behalf of the Whites included the testimony of elder members of the White family, now in their seventies, that as youths they had terraced the parcel for the planting of corn. Their testimony provided that corn was planted up to the barbed-wire fence that now separates the disputed parcel from the remainder of Apperson's and Pierce's lands. This testimony was substantiated by the chancellor's written judgment in which he wrote that he observed, during his walk about the property, that the parcel had in fact been terraced and showed other evidence of ancient cultivation. It is well-settled that "actual or constructive occupation, cultivation, or residence is sufficient to constitute adverse possession." Kayser, 309 So.2d at 528-29 (emphasis added).
¶ 11. Finally, Apperson and Pierce argue that the only act of the Whites sufficient to raise a flag of ownership over the property was the clear-cutting of the property in 1995-96, and the fact that this action was filed in 2002 establishes that the statutory period of ten years for adverse possession has not been met. However, in addition to the substantial possessory acts listed above, the Whites presented various timber deeds proving that they had continuously harvested timber on the disputed parcel for over forty years. After a thorough review of the record, we find the evidence more than sufficient to support the chancellor's finding that the Whites and their predecessors had flown their flag and asserted a claim of ownership over the property. Apperson, Pierce, and their predecessors in interest were sufficiently placed on notice of the Whites' claim of ownership over the disputed parcel, and their claim of ownership had persisted for a period well beyond the statutory minimum.
2. Actual or hostile
¶ 12. The actual or hostile occupation of land necessary to constitute adverse possession requires a corporeal occupation, accompanied by a manifest intention to hold and continue to hold the property against the claim of all other persons, and adverse to the rights of the true owner. Magee v. Magee, 37 Miss. 138, 153 (1859). The adverse possessor must hold the property without the permission of the true title owner since "permission defeats adverse possession." Gillespie v. Kelly, 809 So.2d 702, 706-07(¶ 14) (Miss.Ct.App.2001) (citing Myers v. Blair, 611 So.2d 969, 971 (Miss.1992)). Here, there was no testimony presented on behalf of Apperson and Pierce that the Whites were ever given permission to use the disputed parcel. In fact, Apperson testified that her father never granted such permission. Furthermore, we hold the Whites' possessory acts of building a fence, planting crops, and continually harvesting timber to be hostile to the ownership interests of Apperson, Pierce, and their predecessors in interest, and sufficient to meet the burden of proof as to this element of adverse possession.
3. Open, Notorious, and Visible
¶ 13. Neither the Whites, nor their predecessors in interest, tried to hide their use of the disputed parcel. The fence constructed by the Whites was a clear and visible indicator of their occupation of the property as were the crops that were planted thereon. These possessory acts were easily discoverable by Apperson, Pierce, and their predecessors in interest by merely walking their property and observing its state.
4. Continuous and Uninterrupted for a Period of Ten Years
¶ 14. Apperson's and Pierce's argument that the Whites' clear-cutting of the property *1119 in 1995-96 fails to meet the statutory requirement of ten years because the action to quiet title was filed in 2002 completely disregards the evidence of the Whites' forty to sixty years of occupation. For the reasons stated under the "claim of ownership" element of this opinion, we hold that the chancellor did not err in finding that the Whites had established by clear and convincing evidence that their adverse occupation of the disputed parcel had persisted for well in excess of the statutory period of ten years.
5. Exclusive
¶ 15. "Exclusive use" does not mean that no one else may use the property. Moran v. Sims, 873 So.2d 1067, 1069(¶ 10) (Miss.Ct.App.2004). Exclusivity, within the meaning of the statute, means that the adverse possessor's use of the property was consistent with an exclusive claim to the right to use the property. Id. Exclusive use is at the most basic level the intent of actual and hostile possession. We hold this element to have been satisfied by the evidence presented on behalf of the Whites and found within the record.
6. Peaceful
¶ 16. The mere existence of a dispute over the use of land does not present an obstacle to satisfy the element of peaceful use. Simple disputes often arise between neighboring landowners, but do not rise to the level of destroying the peaceful existence between them. Dieck v. Landry, 796 So.2d 1004, 1009(¶ 15) (Miss. 2001). No evidence is presented establishing a non-peaceful existence between Apperson and Pierce and the Whites or their predecessors in interest. Therefore, this element of adverse possession is satisfied.
¶ 17. The evidence presented before the chancery court clearly established each element of adverse possession by the Whites and their predecessors in interest. With respect to our standard of review, we may only reverse the chancellor's decision where we find evidence that the decision was arbitrary and capricious, clearly erroneous, manifestly in error, or an incorrect legal standard was applied. Here, we find no such evidence. The chancellor's findings of fact are supported by the record and his conclusions of law are sound.
II. WHETHER THE CHANCELLOR ERRED BY FAILING TO CONSIDER TESTIMONY AND OTHER EVIDENCE PRESENTED AT TRIAL ON BEHALF OF APPERSON AND PIERCE?
¶ 18. Apperson and Pierce claim that the chancellor failed to consider the testimony and evidence presented on their behalf when he found the Whites to have acquired the disputed property by adverse possession. However, our review of the record does not support this contention. In paragraph one of his written judgment, the chancellor specifically stated that in arriving at his decision he considered (1) all of the evidence, documents, and exhibits offered at trial, (2) his personal review of the property, and (3) testimony of Cathy P. Apperson, Michael Pierce, J.L. Pierce, Tommy Apperson, Jamie Stovall, Lester White, J.L. White, Jr., and John White (all of the persons who testified at the trial). The chancellor further addressed testimony offered by Apperson and Pierce that the fence purported by the Whites to be a boundary fence was a part of a series of cross-fences running through Apperson's property and placed there by their father. However, the chancellor determined, as the finder of fact, that the testimony offered by the Whites on the issue of the fence was more credible. The chancellor went on to list each of the acts of dominion over the property exercised by the Whites and made a factual determination as to *1120 whether or not those acts had been exercised continuously for a period in excess of the statutorily required ten years. After review of the record, we find no evidence that the chancellor failed to consider the testimony offered on behalf of Apperson and Pierce and this issue is without merit.

CONCLUSION
¶ 19. After an exhaustive review of the record, we find the evidence presented in favor of the Whites' claim of adverse possession sufficient to sustain their burden of proof. We further find that the chancellor properly evaluated all the testimony and evidence presented. The chancellor's findings of fact are supported by the record, his conclusions of law are sound, and no evidence exits that he failed to consider the testimony offered on behalf of Apperson and Pierce. Accordingly, the decision of the Chancery Court of Kemper County is affirmed.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF KEMPER COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] "Ten years' actual possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have been commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title. . . ."