MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. Wayne and Molly Johnson (collectively, the Johnsons) filed suit in the Chickasaw County Chancery Court against Kenneth and Teresa Hill (collectively, the Hills) over a strip of land between their properties. After conducting a two-day trial, the chancellor found that the John-sons owned the property in question. Aggrieved from the chancellor’s finding, the Hills appeal arguing that: (1) the chancellor erred in her findings of fact; (2) the chancellor erred in her conclusions of law; and (3) the chancellor erred in failing to grant their motion for a new trial. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. In 1984, the Johnsons acquired a farm in Chickasaw County from Morgan Davis’s heirs. The farm contained approximately eighty acres in section 22, township 13 south, range 3 east. The southeast corner of this property also served as the southeast corner of section 22. The warranty deed conveying the property to the Johnsons was subject to an exclusive easement to Jean M. Smith
 
 [1]
 
 for purposes of ingress and egress.
 

 ¶ 3. In 2000, the Hills purchased approximately twenty acres of land that was directly south of the Johnsons’ land. Their land was mainly located in the northeast quarter of section 27, township 13, range 3 east, and a small portion in section 26. This land was previously owned by Howard Davis. To the east of each of these parcels of land is the Soctahoma Creek and the Tombigbee National Forest.
 

 ¶ 4. The two sections of land have a shared boundary line to the south of the Johnsons’ property in section 22 and to the north of the Hills’ property in section 27. The southeast corner of section 27 is also the northeast corner of section 22. In between these parcels of land is what was commonly referred to as a “field road.” The “field road” runs more or less in an east-west direction between the two sections. Each party is claiming that their property includes the “field road.”
 

 ¶ 5. On January 12, 2007, the Johnsons filed suit against the Hills seeking confirmation of title providing that they own the “field road,” injunctive relief against the Hills, and for actual and punitive damages. There was a parade of witnesses at trial. Harold Dendy, a surveyor, testified for the Hills. He stated that a monument placed by the soil conservation service and forestry service (forestry monument) served as the corner between section 22 and 27. This would put the section boundary line north of the “field road” and place the “field road” in the Hills’ property. The Johnsons called Sam Jaynes as their surveyor. He stated that the true section corner was 26.75 feet south of the monument. He stated that the section boundary line ran more or less along a fence on the south side of the “field road.” This would place the “field road” on the John-sons’ property. In addition to the parties, several long-time residents of the area testified. Many of them stated that the fence on the south side of the “field road” was always accepted as the boundary line between the two parcels-Morgan Davis owned the land north of the fence, and Howard Davis owned the land to the south of the fence.
 

 
 *429
 
 ¶ 6. At the end of the trial, the chancellor found that fence line on the south side of the “field road” served as the property line between the two parcels and, furthermore, that the Johnsons and their predecessors had gained title to the “field road” up to the south fence line through adverse possession. The Hills filed a motion to amend the chancellor’s findings of fact, which the chancellor denied. Thereafter, the Hills filed a motion for a new trial, which was also denied by the chancellor. The Hills now appeal the chancellor’s ruling.
 

 STANDARD OF REVIEW
 

 ¶ 7. The supreme court in
 
 Ballard v. Commercial Bank of DeKalb,
 
 991 So.2d 1201, 1204-05(¶ 13) (Miss.2008) provided our standard of review for the chancellor’s ruling:
 

 This Court has a limited standard of review in examining and considering the decisions of a chancellor. The [appellate court] will not disturb the findings of the chancellor unless the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Thus, where there is substantial evidence to support the chancellor’s findings, [the appellate court] is without the authority to disturb his [or her] conclusions, although this Court might have found otherwise as an original matter.
 

 (Internal citations omitted).
 

 DISCUSSION
 

 I. WHETHER THE TRIAL COURT ERRED IN ITS FINDINGS OF FACT.
 

 ¶8. The Hills claim that the trial court made eleven findings of fact that are not supported by the evidence. We will address the findings of fact as a whole.
 
 See Bonderer v. Robinson,
 
 502 So.2d 314, 316 (Miss.1986).
 

 ¶ 9. The trial court found the following: the fence on the south side of the “field road” served as the property line between the Johnsons’ and the Hills’ properties; the Johnsons owned the “field road” and the land up to a fence on the south side of the “field road”; and the Hills’ property started at the fence and ran south from that point.
 

 ¶ 10. One of the main cruxes of the Hills’ argument is based on the testimony of their surveyor. The Hills’ surveyor, Dendy, testified that, based upon his work, the shared section corner between the two properties was a forestry monument. Using this as his starting point, he ultimately concluded that the section line was north of the “field road” which placed the “field road” in the Hills’ property. However, Dendy undermined himself during his testimony. He stated that he settled with the forestry monument as his starting point because he could not find other forms of monuments designating the boundary line for the section corner. He also stated that it is likely the monument is not in its original place. Furthermore, he testified that he was not certain the monument served as the southeast corner of section 27, which is part of the Johnsons’ property.
 

 ¶ 11. The trial court deferred to the Johnsons’ surveyor, Jaynes. While surveying the subject land, Jaynes used global positioning satellites and infrared measuring devices in addition to the original plat maps for the area. Jaynes concluded that the forestry monument was 26.75 feet north of the original marker and corner. His survey revealed that the section line on the south side of section 27 ran very close to the fence on the south side of the “field road.” He ultimately concluded that the “field road” lies in the Johnsons’ property.
 

 
 *430
 
 ¶ 12. Jaynes’s findings were corroborated by other non-party witnesses. Raymond Davis grew up in the area. He testified that it was his understanding that Morgan Davis owned the property north of the fence, and Howard Davis owned the property south of the fence. Likewise, Allie Smith, who also grew up in the area, testified that the Johnsons owned the “field road” and the property to the north, and Howard Davis owned the property to the south. John Passons provided the most support for Jaynes’s findings. Pas-sons leased the land, which is now the Johnsons’ property, from Morgan Davis for four years immediately prior to the Johnsons’ purchase of the farm. He stated that while he was on the property, a big rain washed out part of the creek. Included in this wash-out was the original monument marker and a bridge leading across the Soctahoma Creek. He stated that the original monument was farther south, near Howard Davis’s land. He went on to testify that the fence on the south side of the “field road” had always been accepted as the property line.
 

 ¶ 13. The Hills’ witnesses were all interested parties in the subject land. In addition to the Hills testifying, Kenneth Hill’s father and both grantors of the property to the Hills testified. Each of them testified that they believed the “field road” lies within the Hills’ property. The trial court found the Johnsons’ witnesses to be more credible. We cannot fault the chancellor’s assessment, as all of the Johnsons’s witnesses, but one, were uninterested, non-parties to the present suit.
 

 ¶ 14. It is apparent from the chancellor’s opinion and judgment that she considered all the relevant and pertinent evidence. The evidence overwhelmingly supported her conclusion that the “field road” belonged to the Johnsons and their predecessor in title, Morgan Davis. We cannot say that the chancellor committed manifest error in her factual findings.
 
 [2]
 
 Therefore, this issue is without merit.
 

 II. WHETHER THE CHANCELLOR ERRED IN HER CONCLUSIONS OF LAW.
 

 ¶ 15. The Hills argue that the chancellor erred in her conclusions of law that the Johnsons and their predecessor in title claimed title to the “field road” and the land up to the south fence through adverse possession. They claim that the cases relied on by the chancellor are distinguishable from the present case, and that the chancellor should have relied on Dendy’s survey rather than Jaynes’s survey.
 
 [3]
 

 ¶ 16. One may acquire property legally titled in another through an action to quiet title and after having established by clear and convincing evidence the elements of adverse possession, found in Mississippi Code Annotated section 15-1-13 (Rev.2003) and articulated by our supreme court in
 
 Rice v. Pritchard,
 
 611 So.2d 869, 871 (Miss.1992), before a chancery court of proper jurisdiction.
 
 Apperson v. White,
 
 950 So.2d 1113, 1116(¶ 5) (Miss.Ct.App.2007). Mississippi adopted a six-part test for determining whether adverse possession has occurred: “for possession to be adverse it must be (1) under claim of ownership; (2) actual or hostile; (3) open,
 
 *431
 
 notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful.”
 
 Id.
 
 (citation omitted).
 

 ¶ 17. Essential to the analysis in the present case is that Mississippi allows tacking when “successive occupants are in privity with each other.”
 
 Buford v. Logue,
 
 882 So.2d 594, 606(¶ 43) (Miss.Ct.App.2002). “Privity may be established or created by conveyance, agreement, or understanding which in fact transfers possession.”
 
 Id.
 
 The Johnsons meet the requirement of tacking because they were conveyed Morgan Davis’s property via warranty deeds.
 

 ¶ 18. We will discuss each factor of adverse possession separately.
 

 1. Claim, of Ownership
 

 ¶ 19. In the end, the ultimate question is whether the possessory acts relied upon by the would be adverse possessor are sufficient to fly his flag over the lands and to put the record title holder on notice that the lands are held under an adverse claim of ownership.
 
 Apperson,
 
 950 So.2d at 1117(¶ 7). The chancellor found that the Johnsons and their predecessor in title had established a claim of right through planting and harvesting trees, leasing the land to others, and bush-hogging the “field road” continuously.
 

 ¶20. We find substantial evidence in the record to support the chancellor’s finding that the Johnsons claimed ownership of the “field road.” Wayne Johnson testified that he had planted trees on his land, and the only way to get to that area was by using the “field road.” He also testified that he would use the “field road” to harvest the trees once the Hills removed their blockade. Furthermore, Passons and Sam Gore both testified that they had leased the property from Morgan Davis and the Johnsons respectively, and they used the “field road” during their lease periods. Finally, Lamar Beatty testified that he had bushhogged the “field road” for the Johnsons on two separate occasions since the Johnsons had purchased the property.
 

 ¶ 21. The most substantial evidence of a possessory act by Morgan Davis was the erection of the fence on the south side of the “field road.” “[T]he existence of an old fence, including disputed land in with the land of the claimant, [is] strong evidence of the elements required to prove adverse possession.”
 
 Id.
 
 at 1117(¶ 9). There was extensive testimony about this fence and how long it had existed on the south side of the “field road.” All the witnesses who grew up in the area recalled the fence being on the south side of the “field road” sixty to seventy years ago. This recollection was corroborated by surveyor Jaynes. He testified that the fence was embedded in several “large” trees on the south side of the “field road” evidencing, in his opinion, that the fence had been there for approximately sixty years. This Court has stated that “proof of the longevity of the fence’s existence could be found in the barbed-wire having grown deeply into the trees at various points.”
 
 Id.
 

 ¶ 22. We find that the acts performed by Morgan Davis and the Johnsons were sufficient to “fly their flag” over the “field road” and put Howard Davis and the Hills on notice that they are claiming ownership to it.
 

 ¾.
 
 Actual or Hostile
 

 ¶ 28. “The actual or hostile occupation of land necessary to constitute adverse possession requires a corporeal occupation, accompanied by a manifest intention to hold and continue to hold the property against the claim of all other persons, and adverse to the rights of the true owner.”
 
 Id.
 
 at 1118(¶ 12) (cit-
 
 *432
 
 mg
 
 Magee v. Magee,
 
 37 Miss. 138, 153 (1859)).
 

 ¶ 24. In the case at bar, there was no testimony that Morgan Davis or the John-sons had given permission to Howard Daws or the Hills to use the “field road.” The evidence presented showed that Morgan Davis and the Johnsons had used the “field road” continuously and uninterrupted. Additionally, we find that the posses-sory acts of bushhogging the “field road,” leasing the property to others, and walking and driving on the road are sufficient to meet this element of adverse possession.
 

 3. Open, Notorious, and Visible
 

 ¶ 25. The Johnsons and Morgan Davis did not attempt to hide their use of the “field road.” The fence on the south side of the “field road” was a “clear and visible indicator” of their occupation and use of the “field road.”
 
 Id.
 
 at (¶ 13). As correctly observed by the chancellor, the John-sons walked the road, drove on the road, and bushhogged the road, among other things. Furthermore, there was testimony that Morgan Davis, Passons, and Gore all used the “field road” in their farming operations. These acts were easily discoverable by Howard Davis and the Hills.
 

 V Continuous and Uninterrupted for Ten Years
 

 ¶26. The Johnsons acquired Morgan Davis’s farm in 1984. The Johnsons continuously used the “field road” until 2004, when the Hills placed a blockade on the road claiming ownership, creating the present claim. Prior to the Johnsons, Morgan Davis continuously used this road uninterrupted for approximately fifty years. Therefore, we find that the chancellor was provided with sufficient evidence that the Johnsons and their predecessor in title used the “field road” far in excess of the ten-year statutory requirement.
 

 5. Exclusive
 

 ¶ 27. “ ‘Exclusive use’ does not mean that no one else may use the property.”
 
 Id.
 
 at 1119(¶ 15) (citing
 
 Moran v. Sims,
 
 873 So.2d 1067, 1069(¶ 10) (Miss.Ct.App.2004)). “Exclusivity, within the meaning of the statute, means that the adverse possessor’s use of the property was consistent with an exclusive claim to the right to use the property.”
 
 Id.
 
 “Exclusive use is at the most basic level the intent of actual and hostile possession.”
 
 Id.
 

 ¶ 28. The evidence presented showed that Howard Davis’s use of the “field road” was, at best, scant. Conversely, there was a plethora of evidence that Morgan Davis and the Johnsons used the “field road.” They walked the road, drove on the road, bushhogged the road, and allowed leasees to use the road during their lease period.
 
 [4]
 

 6. Peaceful
 

 ¶ 29. “The mere existence of a dispute over the use of land does not present an obstacle to satisfy the element of peaceful use.”
 
 Id.
 
 at (¶ 16). “Simple disputes often arise between neighboring landowners, but do not rise to the level of destroying the peaceful existence between them.”
 
 Id.
 
 (citing
 
 Dieck v. Landry,
 
 796 So.2d 1004, 1009(¶ 15) (Miss.2001)).
 

 ¶ 30. There was no evidence presented that Morgan Davis and Howard Davis ever had any conflicts over the “field road.” The only evidence presented that Howard Davis and the Johnsons had any non-
 
 *433
 
 peaceful existence was when Howard Davis confronted Passons once about using the “field road” when he voiced his displeasure with Passons placing a cable across the “field road” to prevent people from coming onto his property. Howard Davis’s concern was that hunters should be able to access to the “field road” to cross the property. Passons told him that he was going to keep the cable up and that Howard Davis would have to allow the hunters to use his property, which Howard Davis did. However, this one-time, conflict was resolved without any further disagreements between Passons and Howard Davis. Additionally, no evidence was presented that any discord existed between the Johnsons and Howard Davis with regard to the “field road.”
 

 ¶ 31. The evidence presented to the trial court clearly established each element of adverse possession. Therefore, we find that the chancellor did not err in finding that the Johnsons and their predecessor in title claimed title to the “field road” through adverse possession. Accordingly, this issue is without merit.
 

 III. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING THE HILLS’ MOTION FOR A NEW TRIAL.
 

 ¶82. The Hills argue that the trial court erroneously found that Gore stated that the fence on the south side of the “field road” was the property line. The Hills argue the trial court relied on this misstatement in its determination.
 

 ¶ 33. “The standard of review for considering a trial court’s decision denying a motion for a new trial is whether the trial court abused it[s] discretion.”
 
 Smith v. Crawford,
 
 937 So.2d 446, 447(¶ 5) (Miss.2006) (citations omitted).
 

 ¶ 34. Upon our review of the record, we find the trial court did not abuse its discretion by not granting the Hills a new trial. Gore testified that at one point, he simultaneously leased both the Johnsons’ place and Howard Davis’s place. He stated that he leased everything from Howard Davis except for the “field road.” He went on to testify that there was no dispute about using the road.
 

 ¶ 35. The chancellor weighed this testimony with the other testimony regarding the “field road” and the fence, and she found that the evidence supported a finding that the Johnsons owned the “field road.” Moreover, as we stated in Issue I, the evidence overwhelmingly indicated that the Johnsons and their predecessor in title had established title to the “field road,” and any error was only harmless error as it did not result in a miscarriage of justice.
 
 See supra
 
 note 2. Accordingly, this issue is without merit.
 

 ¶ 36. THE JUDGMENT OF THE CHICKASAW COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Jean M. Smith owned the neighboring property to the Johnsons' property.
 

 [2]
 

 . Several of the alleged errors regarding the findings of facts are generalizations and inferences of the testimonies given or misstatements of the parties and actions involved. We find that these errors constitute harmless error as they have no bearing on the ultimate disposition of this case.
 
 See Mathews v. Hale,
 
 767 So.2d 231, 234(¶ 9) (Miss.Ct.App.2000). We only note them for thoroughness.
 

 [3]
 

 . Because we have extinguished the Hills’ issue regarding the surveyors, we will focus our attention on whether a claim for adverse possession was established.
 

 [4]
 

 . It is immaterial that Morgan Davis granted an easement on the property, as "possession may be exclusive notwithstanding the land is subject to right which are mere easements.” 2 C.J.S.
 
 Adverse Possession
 
 § 62 (2003).