CARLTON, J.,
for the Court:
¶ 1. Donald and Carol Greenwood (the Greenwoods) appeal the decision of the Winston County Chancery Court that found Gerald Allen Young Sr. and Melody Young (the Youngs) had properly stated a claim of adverse possession of certain property located in Winston County, Mississippi. The Greenwoods further appeal the chancellor’s denial of their motion in limine. The Greenwoods raise the following assignments of error: (1) whether the chancery court erred in denying their motion in limine and standing objection to exclude any evidence or testimony of adverse possession allegedly occurring prior to the date the court voided the warranty deed from Donald to the Youngs and (2) whether the chancery court erred in holding that the Youngs proved by clear-and-convincing evidence that their actions entitled them to title of the disputed property under the theory of adverse possession. Finding no error, we affirm.
FACTS
¶ 2. On July 16, 1984, Donald purchased a thirty-one acre tract of land in Winston County, Mississippi, from his siblings, Charles W. “Dan” Greenwood,[1] Barbara G. Jones, Sue G. Livington, and Tessie G. Higginbotham, but reserved unto the siblings and their heirs the first right of refusal to purchase the property should it be offered for sale. On July 12, 1996, Donald executed a warranty deed conveying two of the thirty-one acres to the Youngs, unbeknownst to his siblings.
¶ 3. Tessie testified that upon discovering that in 2006 Donald had conveyed the property to the Youngs without offering the right of first refusal to his siblings, she employed Taylor Tucker, an attorney. Tucker drafted a letter to the Youngs on August 30, 2006, notifying them of the “right of first refusal” and asking them to convey the property back to Donald. Then, on October 10, 2006, Barbara, Sue, and Tessie (the Sisters)[2] filed a complaint against the Youngs in the Winston County Chancery Court to set aside the 1996 warranty deed.[3] Essentially, the Sisters alleged that when the thirty-one acre tract was originally deeded to Donald in 1984, they retained a right of first refusal should any portion of the property be offered for sale; however, it was not until 2006 that they discovered Donald had conveyed a two-acre portion of the property to the Youngs in 1996.[4] Additionally, the Sisters sought to have the 1996 warranty deed set aside as void because the property was part of the Greenwoods’ homestead property, and Carol did not sign the warranty deed.[5] On December 5, 2007, the court filed an “Agreed Judgment Voiding Warranty Deed and Other Relief,” wherein the chancery court set aside the 1996 warranty deed from Donald to the Youngs as void for lack of spousal signature on homestead property.
*143 ¶ 4. On February 18, 2009, the Youngs, now grantees of a void deed, filed suit against the Greenwoods and the Sisters in the Winston County Chancery Court to quiet and confirm title of the two acres, claiming an interest in the subject property through adverse possession.[6] The case proceeded to trial on December 1, 2009. On the morning of the trial, the court approved the parties’ agreement to dismiss, with prejudice, the Sisters from the suit; and in return, the Sisters received a right of first refusal by the prevailing party in the Youngs’ suit to quiet and confirm title, leaving the Greenwoods as the only defendants in the case.
¶ 5. The chancery court then heard oral argument on the Greenwoods’ motion in limine, which sought to exclude any evidence of acts occurring prior to December 5, 2007, the date the chancery court voided the 1996 warranty deed, that supported the Youngs’ claim of adverse possession regarding the two acres. The chancellor denied the Greenwoods’ motion in limine. The chancery court then heard testimony from several witnesses and admitted nine exhibits into evidence during the two days of trial.
¶ 6. At trial, Melody testified that in preparation for the execution of the warranty deed in 1996, her father had two surveys conducted to establish the boundaries of the two acres. Melody testified that she personally observed the survey markers upon completion of the second survey, and the survey ribbons remained visible up until their deterioration. Melody also stated that she and her father, Dan, contacted the Noxapater Fire Department and initiated a “control burn” of her grandmother’s abandoned house on the property after Donald conveyed the property to her. Melody further testified she and her husband paid the property taxes for the two acres for ten years, and she obtained an E-911 address for the property in 1999 for purposes of placing a mobile home on the property until she and Gerald could build a house on the property when they retired. Melody stated that at her direction, Charles Ray Greenwood (Ray), her brother, and her father bush-hogged the property at least four times; and a bulldozer was once used to establish a “pad” for a mobile-home site. Melody further testified she possessed no knowledge of Donald’s alleged use of the property from July 1996 until August 2006, and she stated the only time she saw any other family members using the property was strictly as an access to drive to the back of the property to a pond.[7] Finally, Melody testified no one questioned her regarding her ownership of the property until sometime shortly after August 31, 2006, when she received the letter from Tucker, three days after her father’s death and over ten years after Donald had executed the warranty deed to her and Gerald in 1996.
¶ 7. Ray testified in corroboration with Melody’s testimony. Ray stated he remembered when Donald conveyed the two acres to Melody, and after a survey was conducted on the two acres, he saw the metal posts and ribbons marking the property’s boundaries. He testified he bush-hogged the two acres on at least three instances, and his father bush-hogged the *144 property twice. In addition, Ray testified he remembered seeing the results of bulldozer work on the property on at least two occasions — once to remove or bury the debris from the burned house and once to clear a “pad” for a mobile-home site. Ray testified that from the date the warranty deed was executed in 1996 until the date of his father’s death in 2006, he thought Melody, his sister, owned the two acres of property.
¶ 8. Donald also testified at trial. Donald acknowledged that Dan had a survey conducted of the property in anticipation of the execution of the warranty deed in 1996, and he remembered that the property was flagged with stakes and fluorescent pink tape which remained on the property until it rotted off. Donald testified he was not aware the old house on the property was going to be burned, but Carol informed him of the control burn of the house, which he claimed occurred on July 8, 1996, while he was in Hattiesburg, Mississippi. Further, Donald stated that he sold dirt off his remaining acres of property but never the two acres at issue. Donald also testified that improvements were made to the road that crosses the two acres of the property in order for the dirt haulers he contracted to access the dirt pile on his property; however, he admitted that some of the improvements were made prior to 1996 and that any improvements thereafter were made by the contract dirt haulers for the purpose of removing the dirt. Donald stated he hunted on the two acres “some every hunting season” and traveled across the property at least once a week. Donald also testified he bush-hogged the property once in 2006, and he saw Ray bush-hog the property on one other occasion. Donald admitted from the time of the preparation of the deed, July 12, 1996, until August 31, 2006, no action or lawsuit was filed contesting the deed, and he exchanged no cross words with anyone concerning the ownership of the property. When asked why he decided he did not want the Youngs to have the property anymore, Donald replied he realized he treated his family wrongly.
¶ 9. Carol testified she and Donald separated from each other, by agreement, in 2003, and she moved to Philadelphia, Mississippi. Carol provided that she did not return to the marital home; instead, she established a separate residence in a trailer located on the Greenwoods’ remaining land in 2008. Carol stated she had neither seen the Youngs on the property nor any bulldozer work being performed on the two acres. Carol further stated that Donald did not sell dirt off of the two acres during the relevant time periods.
¶ 10. Tessie, Donald’s sister, also testified. Tessie testified that the control burn of the house on the two acres occurred on July 8,1996, and she attended the burning. Tessie also stated she did not see anyone do the bulldozer work on the property, but she did see the results of bulldozer work. Tessie also acknowledged that the property had been bush-hogged three or four times during the ten-year period; however, she never saw the Youngs using the two acres during this time period. Additionally, Tessie testified she had seen the survey stakes and flags on the property.
¶ 11. After the witnesses testified, the chancellor, the parties, and the parties’ attorneys[8] inspected the two acres. At the conclusion of the trial, the chancellor found the Youngs owned the two acres of property in dispute through adverse pos *145 session. Aggrieved, the Greenwoods appeal the chancellor’s final judgment and opinion, as well as his ruling on the motion in limine.
STANDARD OF REVIEW
¶ 12. This Court employs a limited standard of review when reviewing the decisions of a chancellor. Pulliam v. Bowen, 54 So.3d 331, 334 (¶ 10) (Miss.Ct.App.2011) (citing Nichols v. Funderburk, 883 So.2d 554, 556 (¶7) (Miss.2004)). “The chancellor’s determinations will only be reversed when they were manifestly wrong, clearly erroneous, or when the chancellor applies an incorrect legal standard.” Id. Generally, a finding that proof was sufficient to sustain an adverse-possession claim is finding of fact and requires the application of the substantial-evidence/manifest-error rule. Id. (citing Walker v. Murphree, 722 So.2d 1277, 1280 (¶ 15) (Miss.1998)).
DISCUSSION
I. MOTION IN LIMINE
¶ 13. The Greenwoods argue the chancellor erred in denying their motion in limine and standing objection which requested the exclusion of evidence or testimony offered to prove adverse possession through the Youngs’ acts occurring prior to December 5, 2007, the date on which the chancellor declared the 1996 warranty deed void. The Greenwoods allege adverse possession cannot be established for any time prior to the voiding of the warranty deed because a claim of adverse possession cannot begin unless the landowner has actual or constructive knowledge that there is an adverse claim against his property, and Donald was never on notice that the Youngs were claiming the land in some method hostile or adverse to the warranty deed. The Greenwoods further contend, based on the Youngs’ “illusory position” as the record title holder of the disputed property as the grantees under the 1996 warranty deed, none of their actions would have provided Donald notice of the Youngs’ attempt to possess the disputed property adversely. Additionally, the Greenwoods argue that any possessory acts by the Youngs on the disputed two acres prior to December 5, 2007, would not be adverse to them, as Donald essentially provided the Youngs his permission to occupy and use the two acres by signing the warranty deed in 1996.
¶ 14. In support of their argument, the Greenwoods cite Washington v. Crowson, 222 So.2d 137, 139 (Miss.1969), for the proposition that, so long as the grantee occupies property by virtue of a covenant in the deed, its possession is not adverse to the grantor. However, we find Washington to be distinguishable from this case. In Washington, the Mississippi Supreme Court found that where a church, which had been built on land conveyed to it by a deed containing a provision for reversion to the grantor in the case the church was no longer maintained on the property, ceased to “maintain a church” on the property, the property at issue reverted to the grantors of the property and the church possessed no claim of adverse possession. Id. at 140. In so finding, the supreme court explained:
Of course if the occupation of the land were held by virtue of the covenant in the deed, the church was bound by the terms of the covenant, and so long as the grantee occupies property by virtue of the covenant in the deed, the church could not obtain title to the property by adverse possession. The possession of the property in that event was not adverse to the grantor. Until the grantee in the deed brought to the attention of the landowner notice that the grantee claimed the land in some method hostile *146 and adverse to the covenant to the deed, adverse possession could not be established.
Id. at 139-40.[9]
¶ 15. Contrarily, in the present case, the chancellor set aside the 1996 warranty deed as void, meaning the warranty deed conveying the two acres to the Youngs in 1996 was void from the beginning, and the Youngs received no rights to the property from the warranty deed. With no rights to the property passing under the void warranty deed, all of the Youngs’ actions affecting the two acres at issue from 1996 forward were adverse and hostile to the Greenwoods’ ownership of the property and color of title. See Avera v. Williams, 81 Miss. 714, 33 So. 501, 501 (1903) (A deed to homestead property, in which the grantor’s wife failed to join, though void, operates as color of title to sustain a claim by adverse possession as against third persons.). See also 2 C.J.S. Adverse Possession § 113 (2003) (“Adverse possession of property under a void or defective deed may ripen into title, and a void or worthless deed may be sufficient to show the hostile character of the possession, or the date on which adverse possession began, and the nature and extent of possession.”); 2 C.J.S. Adverse Possession § 116 (2003) (“A deed to property containing a homestead void for failure of the grantor’s spouse to join therein may constitute color of title within limitation statutes, although such a deed may not constitute ‘title or color of title’ within a limitation act requiring possession under title or color deraigned from the sovereignty of the soil.”).
¶ 16. Accordingly, we find the chancellor did not abuse his discretion by denying the Greenwoods’ motion in limine. This issue is without merit.
II. ADVERSE POSSESSION
¶ 17. The Greenwoods argue that even if this Court affirms the chancery court’s denial of their motion in limine, the Youngs still failed to prove by clear-and-convincing evidence that, by their specific actions, they are entitled to title of the disputed property through adverse possession, pursuant to Mississippi Code Annotated section 15-1-13(1) (Rev. 2003).
¶ 18. This Court recognizes the limited standard of review to be employed by the appellate courts when reviewing a chancellor’s decision. In discussing the applicable standard of review, the Mississippi Supreme Court stated:
It requires little familiarity with the institutional structure of our judicial system to know that this Court does not sit to redetermine questions of fact. Our scope of review is severely limited. Suffice it to say that we have no authority to grant [the] appellant any relief if there be substantial credible evidence in the record undergirding the determinative findings of fact made in the chancery court.
Rawls v. Parker, 602 So.2d 1164, 1167 (Miss.1992) (citing Johnson v. Black, 469 So.2d 88, 90 (Miss.1985)).
¶ 19. Mississippi Code Annotated section 15-1-13(1) governs claims of adverse possession, providing in part:
*147 Ten (10) years’ actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title, saving to persons under the disability of minority or unsoundness of mind the right to sue within ten (10) years after the removal of such disability, as provided in Section 15-1-7. However, the saving in favor of persons under disability of unsoundness of mind shall never extend longer than thirty-one (31) years.
In order to establish a claim of adverse possession, the party claiming to have adversely possessed the property must show, by clear-and-convincing evidence, that his possession was (1) under a claim of right or ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. Pulliam, 54 So.3d at 334 (¶ 13) (citations omitted).
¶ 20. We will discuss each factor of adverse possession separately.

1. Claim of Ownership

¶ 21. “In the end, the ultimate question is whether the possessory acts relied upon by the would be adverse possessor are sufficient to fly his flag over the lands and to put the record title holder on notice that the lands are held under an adverse claim of ownership.” Hill v. Johnson, 27 So.3d 426, 431 (¶ 19) (Miss.Ct.App.2009) (citations omitted). Here, according to Melody’s testimony, the Youngs’ adverse possession of the two acres at issue was completed in 2006, as Donald signed the later-voided warranty deed conveying the two-acre property to the Youngs in 1996, and the Youngs exerted an ownership interest in the two acres from that time until the start of the Sisters’ litigation. The Greenwoods again argue that the Youngs’ possession of the property would not be adverse to Donald, the grantor of the warranty deed, based on the proposition that, so long as the grantee occupies property by virtue of a covenant in the deed, its possession is not adverse to the grantor. See Washington, 222 So.2d at 139. As previously discussed in this opinion, this argument has no merit, and we decline to address it further.
¶ 22. In finding the Youngs established a claim of adverse possession, the chancellor relied upon evidence of the survey markers on the property, the bulldozer work, and the bush-hogging, which were all done by the Youngs or at the direction of the Youngs. The chancellor recognized that the Youngs also paid the taxes on the property for the ten-year period, and the Youngs obtained an E-911 address for the property in 1999. Furthermore, testimony was presented at trial showing that the Greenwoods claimed no ownership of the property until 2006 when the Sisters initiated litigation. Therefore, we find that the Youngs’ claim of ownership of the disputed property is sufficient to establish their claim of adverse possession.

2. Actual or Hostile

¶23. “The actual or hostile occupation of land necessary to constitute adverse possession requires a corporeal occupation, accompanied by a manifest intention to hold and continue to hold the property against the claim of all other persons, and adverse to the rights of the true owner.” Hill, 27 So.3d at 431—32 (¶ 23).
¶ 24. Here, while testimony was presented on behalf of the defense claiming the Youngs were never seen using the disputed property during the relevant *148 time, Melody and Ray presented testimony to the contrary. As recognized by the chancellor, the Youngs, through their employed contractors or designated agents, bush-hogged the property on several occasions and completed bulldozer work on the property in preparation for the pad for their mobile-home site. The Youngs also paid the taxes on the property for the ten-year period. Additionally, the testimony showed the survey markers were visible on the two acres for an extended period of time. Clearly, their actions were sufficient to put others on notice that their possession of the two acres was adverse to the true owner. Melody showed that she and Gerald actually used the property, and their use was hostile to the Greenwoods’ ownership.
¶ 25. While the Greenwoods claim that Donald essentially provided the Youngs his permission to occupy and use the two acres by signing the warranty deed in 1996, we find that no such permission was granted since the 1996 warranty deed was later declared void by the chancery court. Therefore, substantial evidence exists in the record to support the chancellor’s finding.

3. Open, Notorious, and Visible

¶ 26. “The mere possession of land is not sufficient to satisfy the requirement that the adverse possessor’s use be open, notorious, and visible.” Webb v. Drewrey, 4 So.3d 1078, 1083 (¶ 19) (Miss.Ct.App.2009) (citation omitted). An adverse-possession claim will not begin “unless the landowner has actual or constructive knowledge that there is an adverse claim against his property.” Id. “An adverse possessor ‘must unfurl his flag on the land, and keep it flying, so that the (actual) owner may see, and if he will, [know] that an enemy has invaded his domains, and planted the standard of conquest.’ ” Id.
¶ 27. The chancellor found the Youngs’ actions were sufficiently open, notorious, and visible. We find sufficient evidence in the record supporting the chancellor’s conclusion. According to the record, the Youngs maintained and cared for the property by bush-hogging and completing bulldozer work several times on the property from July 1996 until the start of litigation in 2006. Several witnesses acknowledged seeing the results of the bush-hogging and bulldozer woi'k on the two acres. Additionally, the Youngs obtained an E-911 address for the property and paid the taxes on the property from 1996 until 2006. The Youngs never tried to hide or conceal their use of the property. Thus, we find there is substantial evidence to support the chancellor’s finding that the Youngs completed possessory acts that were open, notorious, and visible.
A Continuous and Unintermpted for Ten Years
¶ 28. The chancellor found the Youngs adversely possessed the two acres for a period in excess of ten years in a continuous manner. We find the evidence supports the chancellor’s finding. The Youngs acquired the two acres in 1996 pursuant to the later-voided warranty deed. Based on the record, the Green-woods did not assert their claim of ownership of the property until 2006. In fact, testimony was presented at trial showing that no one questioned or exchanged cross words with the Youngs concerning their ownership of the two acres prior to the initiation of litigation in 2006. Thus, the Youngs’ possession of the property was continuous and uninterrupted from 1996 until 2006, in excess of the ten-year period statutorily required.

5. Exclusive

¶29. “Exclusivity, within the meaning of the statute, means that the *149 adverse possessor’s use of the property was consistent with an exclusive claim to the right to use the property.” Hill, 27 So.3d at 432 (¶ 27). “Exclusive use is at the most basic level the intent of actual and hostile possession.” Id. “To satisfy the element of exclusivity, ‘the claimant’s conduct must afford an unequivocal indication that he is exercising dominion of a sole owner.’ ” Stone v. Lea Brent Family Invs., L.P., 998 So.2d 448, 455 (¶ 25) (Miss.Ct.App.2008) (citations omitted). “Exclusive use” does not mean that no one else uses the property. Id. “Rather, exclusive use indicates a right to use the land above other members of the general public.” Id. The record shows that the use of the property by members of the Young family living near the property, including Donald, was scant. Conversely, the Youngs, through their third-party agents, maintained the property by bush-hogging and readying it for their own future development. Accordingly, we find there is substantial evidence to support the chancellor’s finding that the Youngs possessed the property exclusive to all others.

6. Peaceful

¶ 30. The adverse possession must be peaceful. Jordan v. Fountain, 986 So.2d 1018, 1023 (¶ 17) (Miss.Ct.App.2008). “The mere existence of a dispute over the use of land does not present an obstacle to satisfy the element of peaceful use.” Hill, 27 So.3d at 432 (¶ 29). “Simple disputes often arise between neighboring landowners, but do not rise to the level of destroying the peaceful existence between them.” Id. The record shows that the Youngs remained in possession of the property from July 1996 forward unchallenged by any other party, until the initiation of litigation in August 2006. By this time, the Youngs had already peacefully possessed the disputed property for a period of time in excess of ten years. Thus, we again find substantial evidence in the record supporting the chancellor’s finding.
¶ 31. The chancellor’s decision was supported by substantial evidence. The evidence presented to the chancery court clearly established each element of adverse possession. While some contradicting testimony was presented in this case, we decline to reverse simply because some of the witnesses testified to the contrary. See Standi v. Farris, 60 So.3d 817, 824 (¶ 14) (Miss.Ct.App.2011) (“If clear[-]and[-]convineing evidence could never be shown in the presence of contradictory testimonies, virtually no case requiring a showing by clear-and-convincing evidence could be proven. Such is clearly not the case.”). Therefore, we find that the chancellor did not abuse his discretion in finding that the Youngs claimed title to the two acres through adverse possession. See Pulliam, 54 So.3d at 334 (¶ 10). Accordingly, this issue is without merit.
¶ 32. THE JUDGMENT OF THE WINSTON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, MAXWELL AND RUSSELL, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT. FAIR, J., NOT PARTICIPATING.

. Melody is Dan’s daughter.

. Dan passed away in August 2006.

. Both parties note that the Sisters' lawsuit is not the case on appeal before this Court today. However, both parties explain in their appellate briefs the need to explain the complex litigation history involving the property at issue due to the series of litigation over the property.

. We were provided this information through the Greenwoods' appellate brief.

. This information is taken from the Green-woods’ appellate brief.

. The Youngs allege they filed their original "Complaint to Quiet and Confirm Title to Real Estate by Adverse Possession” on November 27, 2007, but the chancery court dismissed the original suit without prejudice for failure to serve the defendants within 120 days of filing suit. The Youngs then filed their "Second Amended Complaint to Quiet and Confirm Title to Real Estate by Adverse Possession” from which this appeal now stems.

. Melody testified the pond was not on the two acres.

. The Youngs note that Gerald did not appear at trial, and James C. Mayo, Carol’s attorney, did not attend the inspection of the property.

. See 2 C.J.S. Adverse Possession § 130 (2003) (citing Washington v. Crowson, 222 So.2d 137 (Miss.1969)) ("While the grantee of an estate on condition subsequent may secure title by adverse possession in a proper case, it is not conceptually logical for such a grantee to acquire an indefeasible estate simply by remaining in possession of the property following a breach of condition; particularly where the possession of such a grantee is purely constructive and he or she has done no act tantamount to a disavowal of their obligation to perform the condition, it will not be regarded as hostile.”).