# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00902-COA

**EDDIE ORCUTT**                                                    **APPELLANT**

**v.**

**CHARLES CHAMBLISS, INDIVIDUALLY,**                     **APPELLEES**
**JEFFERSON COUNTY, MISSISSIPPI, JIM**
**HOOD, IN HIS OFFICIAL CAPACITY AS THE**
**ATTORNEY GENERAL OF THE STATE OF**
**MISSISSIPPI, ALEXANDER C. MARTIN, IN**
**HIS OFFICIAL CAPACITY AS THE DISTRICT**
**ATTORNEY FOR JEFFERSON COUNTY,**
**MISSISSIPPI, AND ANY AND ALL OTHER**
**PERSONS KNOWN OR UNKNOWN, CLAIMING**
**OR HAVING A LEGAL OR EQUITABLE**
**INTEREST OR ASSERTION OF ANY RIGHT,**
**TITLE OR CLAIM TO THE FOLLOWING**
**DESCRIBED PROPERTY SOLD FOR TAXES**
**ON AUGUST 30, 1993: N-WALKER, E.**
**CHAMBLISS-DUNGAN AND CHAMBLISS W.**
**CALHOUN PARCEL NO. 0202-26-002 SECTION**
**26 TOWNSHIP 10 NORTH-RANGE 3 EAST,**
**BEING TWENTY (20) ACRES AND RECORDED**
**IN DEED BOOK 7T AT PAGE 221 ON OCTOBER**
**3, 1995, IN THE DEED RECORDS OF**
**JEFFERSON COUNTY, MISSISSIPPI**

DATE OF JUDGMENT:            05/23/2016
TRIAL JUDGE:                 HON. E. VINCENT DAVIS
COURT FROM WHICH APPEALED:   JEFFERSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      LUCIEN C. GWIN JR.
ATTORNEY FOR APPELLEES:      CHARLES CHAMBLISS (PRO SE)
NATURE OF THE CASE:          CIVIL - REAL PROPERTY
DISPOSITION:                 AFFIRMED IN PART; REVERSED AND
                             REMANDED IN PART- 01/16/2018

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

       **EN BANC.**

**LEE, C.J., FOR THE COURT:**

¶1.     In this case, we must determine whether the chancellor erred in voiding a tax sale and in finding that the tax-sale purchaser did not acquire the subject property by adverse possession. Additionally, we must determine if statutory damages were properly awarded to the tax-sale purchaser. Finding error regarding the chancellor's calculation of the statutory damages, we affirm in part and reverse and remand in part.

## PROCEDURAL HISTORY

¶2.     In July 2014, Eddie Orcutt filed a complaint in the Jefferson County Chancery Court to quiet and confirm tax title in a particular piece of property located in Jefferson County. Orcutt and Savy Kerageorgiou had purchased the subject property at a tax sale on August 30, 1993. The Jefferson County Chancery Clerk issued a tax deed to Orcutt and Kerageorgiou on September 26, 1995. The tax deed indicated the taxes had been assessed to the "Henry Chambliss Estate." Kerageorgiou later conveyed his interest in the property to Orcutt, leaving Orcutt the sole owner of the property, consisting of approximately twenty acres.

¶3.     Charlie Chambliss responded to Orcutt's complaint, claiming that he never received notice of the tax sale and, alternatively, he acquired the property by adverse possession. After a trial, the chancellor determined that Chambliss never received notice of the tax sale; thus, the tax sale was void. The chancellor further found that Orcutt had failed to prove ownership of the land by adverse possession. However, the chancellor did award Orcutt statutory damages totaling $5,151.56.

¶4.     Orcutt now appeals, asserting that (1) the tax sale was not void; (2) he proved adverse

2

possession by clear and convincing evidence; (3) the chancellor erred in calculating the statutory damages; and (4) he should be reimbursed for work performed on the subject property.

**FACTS**

¶5. The property in question is a part of a larger tract of land (seventy-four acres) in Jefferson County, originally belonging to Henry Chambliss, who died in the 1940s. The land is repeatedly referred to as "The Henry Chambliss Estate" (the Estate). Over the years, the property was divided. At the time of trial, Orcutt and his wife owned the west thirty acres (Parcel 1).[1] Little Tree Lumber Company bought the east twenty-five acres from Chambliss in 1981 (Parcel 3). The middle twenty acres is the property at issue (Parcel 2). Chambliss contends he received title to the remainder of the Estate (less the thirty acres in Parcel 1) in 1977 from his uncle, Milton Goudy. Goudy had received his interest in the land from his wife, Everlena Chambliss Goudy, who was an heir of Henry.[2]

¶6. The record contains a warranty deed dated October 22, 1977, stating, in part:

> I, the undersigned, MILTON GOUDY, do hereby sell, convey and warrant unto CHARLIE R. CHAMBLISS all of my undivided interest, supposed to be one-half (1/2), in the following described land and property located and situated in Jefferson County, Mississippi, to-wit:

---

[1] Orcutt and his wife bought the land in 2008 from Tower Loan of Mississippi Inc.

[2] James Chambliss, Charlie Chambliss's father, was originally considered another heir of Henry. In fact, Everlena and James, along with both spouses, conveyed Parcel 1 to James Townsend and his wife in 1974. This deed stated Everlena and James were the only heirs of Henry. However, in a partition suit brought by Chambliss regarding the property, the chancellor dismissed the suit, finding that James was not Henry's son and heir; thus, Chambliss had no interest in the property by way of Henry. In his testimony, Chambliss refers to Everlena as "Mary Evelyn Chambliss Goudy."

The North half (N 1/2) of the Northwest Quarter (NW 1/4) of Section Twenty-six (26), Township Ten (10) North, Range Three (3) East, less and except the West 30 acres thereof sold to James Townsend, et ux, by deed recorded Book 5-T, page 110 of the land records of Jefferson County, Mississippi.

The said Milton Goudy is the sole and only heir at law of Everlena Chambliss Goudy, who died in 1975. The said Everlena Chambliss Goudy inherited her interest in said land from her father, Henry Chambliss, who got the property by deed recorded Book V, page 582 of the land deed records of Jefferson County, Mississippi.

The deed was recorded on November 17, 1977. We note that in 1978, Chambliss deeded his interest in the property (less Parcel 1) to Rosetta Watts, Chambliss's relative. In 1981, Watts deeded the same property back to Chambliss prior to the sale of Parcel 3 to Little Tree Lumber.

¶7. The testimony regarding proof of adverse possession will be discussed in issue II.

## DISCUSSION

### I. Tax Sale

¶8. We first note that the dissent contends the chancellor improperly handled Chambliss's motion for an involuntary dismissal. However, Orcutt did not raise this issue in posttrial motions or in his appellate brief; thus, this issue is procedurally barred. *See J.N.W.E. v. W.D.W.*, 922 So. 2d 12, 20 (¶31) (Miss. Ct. App. 2005).

¶9. Orcutt argues that the tax sale was not void because Chambliss admitted he did not own the property in question. After issuing a judgment finding that the tax sale was void and that neither party had proved adverse possession, the chancellor requested additional briefing regarding statutory damages. In his brief, Chambliss stated he was not liable to Orcutt for

4

statutory damages because he "has no interest in the disputed property." Orcutt relies upon this statement to contend that the chancellor erred in voiding the tax sale. However, the chancellor disregarded this assertion, noting that Chambliss had testified under oath during trial that he was the owner of the property in question and received his interest in the property from Goudy.

¶10. In regard to the tax sale, we agree with the chancellor that the tax sale was void for failure to give proper notice. "When property is sold for unpaid county or municipal ad valorem taxes, the property owner must be given notice of his right to redeem the property within 180 days of, but no less than 60 days prior to, the expiration of the redemption period." *DeWeese Nelson Realty Inc. v. Equity Servs. Co.*, 502 So. 2d 310, 311 (Miss. 1986). The statute governing the owner's right to notice of redemption is Mississippi Code Annotated section 27-43-3 (Rev. 2010), which states that if the reputed owner of the property is a resident of Mississippi, the chancery clerk must give notice by registered or certified mail to the owner's usual physical or mailing address, personal notice in the same manner as in Mississippi Rule of Civil Procedure 4(d)(1), and publication in the county where the land is located. "Statutes dealing with land forfeitures for delinquent taxes should be strictly construed in favor of the landowners." *Viking Invs. LLC v. Addison Body Shop Inc.*, 931 So. 2d 679, 681 (¶7) (Miss. Ct. App. 2006). "Any deviation from the statutorily mandated procedure renders the sale void." *Id.*

¶11. As previously stated, the record indicates the taxes had always been assessed to the Estate, even after Chambliss became record owner. According to Chambliss, the neighboring

landowners had offered to pay the property taxes in exchange for allowing their cows to graze on the land in question. The notice of the tax sale was published three times in the county where the land was located: on August 19, 1993; August 18, 1994; and August 17, 1995. The listing states the property, specifically parcel number 0202-26-002, was to be sold due to delinquent taxes.

¶12. Other than the publication, the chancellor noted that Orcutt did not offer any proof that the other requirements of section 27-43-3 were followed. There was no evidence regarding the chancery clerk's requirements for notice, and there was no evidence that personal service was attempted under Rule 4(d)(1).

¶13. The record contains two documents titled "Notice of Forfeiture." Both are directed to the Estate at an address in Jackson, Mississippi, and both refer to parcel number 0202-26-002. One states that the property was sold on August 28, 1994,

> to [the] State of Mississippi for the county taxes of 1993, and that the title to said land will become absolute in [the] State of Mississippi unless redemption from said tax sale be made on or before [August 15, 1996]. Your taxes are behind, the third year of delinquency is August 1996.

This document is not signed by the chancery clerk as required. The other document states the property was sold on September 28, 1995, "to Kerageorgiou and Orcutt for the county taxes of 1994, and that the title to said land will become absolute in Kerageorgiou and Orcutt unless redemption from said tax sale be made on or before" August 31, 1997. The document is signed and dated February 14, 1997. However, the record includes receipts for payment of taxes for both 1993 and 1994 by Orcutt and Kerageorgiou. The chancellor determined that these notices were not mailed to Chambliss and were not related to the August 30, 1993 tax

6

sale for the unpaid 1992 taxes. The chancellor stated that "no one from the [clerk's office] testified in an attempt to prove that proper notice was actually mailed to anyone relating to this property." The chancellor also held that it was undisputed that Chambliss was the record owner and had not received notice of the sale.

¶14. We agree with the chancellor that the tax sale was void for lack of notice. Next, we must determine whether Orcutt proved ownership of the property by adverse possession.

## II. Adverse Possession

¶15. Orcutt claims that if we find the tax sale void, then he gained title to the property by adverse possession. Mississippi Code Annotated section 15-1-13(1) (Rev. 2012) defines adverse possession as follows:

> Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full complete title . . . .

We apply a six-part test for determining whether adverse possession has occurred: "for possession to be adverse it must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." *Walker v. Murphree*, 722 So. 2d 1277, 1281 (¶16) (Miss. Ct. App. 1998). The burden was on Orcutt to prove each element by clear and convincing evidence. *Ellison v. Meek*, 820 So. 2d 730, 734 (¶13) (Miss. Ct. App. 2002).

¶16. A finding that the proof was sufficient to sustain a claim of adverse possession is a fact-finding that requires our application of the substantial-evidence/manifest-error test.

7

*Walker*, 722 So. 2d at 1280 (¶15). If substantial evidence supports the chancellor's fact-findings, this Court must affirm, even though we "might have found otherwise as an original matter." *Nichols v. Funderburk*, 883 So. 2d 554, 556 (¶7) (Miss. 2004).

¶17. Orcutt contends that the chancellor properly classified the property as "wild lands"; thus, he argues that the proof necessary to establish adverse possession is less than if the property had been improved or developed. "Possessory acts necessary to establish a claim of adverse possession may vary with the characteristics of the land," and "adverse possession of 'wild' or unimproved lands may be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands." *Walker*, 722 So. 2d at 1281 (¶16). The chancellor determined that the land was wild because no one actually lived on the property during the period in question and "all actions claimed or described by any party or other witnesses were of a recreational nature that is more consistent with wild land." However, there was testimony that an empty house formerly occupied by previous landowners was located on the property, indicating that the land was not unimproved.

¶18. Orcutt further relies upon Mississippi Code Annotated section 15-1-15 (Rev. 2012) for support, which states:

> Actual occupation for three years, after two years from the day of sale of land held under a conveyance by a tax collector in pursuance of a sale for taxes, shall bar any suit to recover such land or assail such title because of any defect in the sale of the land for taxes, or in any precedent step to the sale, saving to minors and persons of unsound mind the right to bring suit within such time, after the removal of their disabilities, and upon the same terms as is provided for the redemption of land by such persons.

The supreme court in *Bowser v. Tootle*, 556 So. 2d 1373, 1375 (Miss. 1990), stated,

We do not understand actual occupancy to mean that one must reside personally upon the property[,] but we do understand it to mean possession over the three[-]year period which is of such a nature, throughout the three[-]year period, that another, believing himself or herself to be the owner of the property, would recognize that someone else was asserting a claim to it because of a clearly visible indicia of occupancy on the property.

The chancellor determined that section 15-1-15 was inapplicable to wild lands since there was no "actual occupation" during this time, citing *Waldrop v. Whittington*, 213 Miss. 567, 573, 57 So. 2d 298, 300 (1952). In *Waldrop*, the supreme court determined that the statute "applies only where there is 'actual occupation' under the tax title, and in this case it appears . . . the land in question is wild land and has never been actually occupied by anyone. Consequently . . . the only bar to this suit by limitation would be our ten-year statute. . . ." *Id.* Based upon this, the chancellor applied the ten-year limitation period.

¶19. The chancellor made detailed findings in regard to each element, ultimately finding that Orcutt did not prove adverse possession by clear and convincing evidence.

### 1. Claim of Ownership

¶20. To stake a claim of ownership, the possessor must "fly [his] flag over the property" in such a way as to put the actual owner on notice that the property is "being held under an adverse claim of ownership." *Apperson v. White*, 950 So. 2d 1113, 1117 (¶7) (Miss. Ct. App. 2007). The quality, not the quantity, of acts must be considered. *Id.* at (¶8). The chancellor found that Orcutt satisfied this element due to his payment of taxes on the property since the tax sale, and the existence of recorded deeds since the tax sale, reference Orcutt's ownership. We find substantial evidence supports the chancellor's decision.

### 2. Actual or Hostile

9

¶21.    In regard to the actual-or-hostile element, "[t]he actual or hostile occupation of land necessary to constitute adverse possession requires a corporeal occupation, accompanied by a manifest intention to hold and continue to hold the property against the claim of all other persons, and adverse to the rights of the true owner." *Hill v. Johnson*, 27 So. 3d 426, 431 (¶23) (Miss. Ct. App. 2009). The chancellor determined that the evidence was not clear and convincing regarding this element, and we agree. The chancellor stated that although Orcutt "testified (over a sustained hearsay objection) about someone else running off trespassers, there was no testimony that the property was posted in any way to warn others that they were trespassing." The chancellor noted that "there was very little evidence of any acts to control the use of the subject property. There was no testimony, for example, of any fencing of the property and/or locking of gates by Mr. Orcutt or on his behalf."

### 3.    *Open, Notorious, and Visible*

¶22.    For possession to be open, notorious, and visible, the possessor "must unfurl his flag on the land, and keep it flying, so that the actual owner may see, and if he will, that an enemy has invaded his domains, and planted the standard of conquest." *Roberts v. Young's Creek Inv. Inc.*, 118 So. 3d 665, 670 (¶13) (Miss. Ct. App. 2013) (quoting *Wicker v. Harvey*, 937 So. 2d 983, 994 (¶35) (Miss. Ct. App. 2006)). "The mere possession of land is not sufficient to satisfy the requirement that the adverse possessor's use be open, notorious, and visible." *Webb v. Drewrey*, 4 So. 3d 1078, 1083 (¶19) (Miss. Ct. App. 2009) (citation omitted). An adverse-possession claim will not begin "unless the landowner has actual or constructive knowledge that there is an adverse claim against his property." *Id*.

¶23. The chancellor considered the testimony of the county appraiser, Kenneth Peoples, to be credible in regard to this element. Peoples testified that he visited the property every year, usually in April, for work. According to Peoples, he saw no noticeable changes to the property from year to year.

¶24. Orcutt testified that he first began hunting on the property in 1996, after the two-year redemption period ended. Orcutt stated that he fixed the road and planted two food plots in addition to installing deer stands. Much of Orcutt's testimony is not specific as to when these improvements occurred. Orcutt said he allowed other family and friends to hunt on the land over the years. Other than these people and one person who was lost, Orcutt stated he never saw anyone else on the land in all of the years he owned the property. In contrast, Chambliss also testified that he used the property regularly to hunt and allowed friends and family to do so as well. Chambliss also testified that he planted food plots, fixed the road, and installed deer stands on the property. Like Orcutt, Chambliss stated he never saw anyone other than his friends or family use the land.

¶25. The chancellor stated that "even if the food plots and hunting stands were actually seen by Chambliss, there is not evidence that it was to an extent that it should have reasonably put [Chambliss] on notice . . . as opposed to a trespasser simply hunting on land thought to be unattended."

¶26. The chancellor did note that a survey of the property was conducted in 2014 at the request of someone wanting to buy the twenty-acres and the adjoining thirty-acre tract. Chambliss saw the surveyors and asked them to leave his property. Around this time,

11

Chambliss also saw a "for sale" sign on the property and contacted an attorney representing the seller and advised them he owned the property. The chancellor recognized that these occurrences were enough to put Chambliss on notice, but did not benefit Orcutt because they occurred in 2014. We find substantial evidence supports the chancellor's findings.

### 4. Continuous and Uninterrupted for a Period of Ten Years

¶27. Adverse possession requires continuous and uninterrupted possession of a disputed property for at least ten years. Miss. Code Ann. § 15-1-13(1). The chancellor found Orcutt proved this element, and we agree.

### 5. Exclusive

¶28. "Exclusive possession means that the possessor 'evinces an intention to possess and hold land to the exclusion of, and in opposition to, the claims of all others, and the claimant's conduct must afford an unequivocal indication that he is exercising the dominion of a sole owner.'" *Roberts*, 118 So. 3d at 671 (¶15) (quoting *Wicker*, 937 So. 2d at 995 (¶40)). Exclusive possession "does not mean that no one else can use the property." *Id.* (citation omitted). As previously stated, both Orcutt and Chambliss claimed to have been on the property regularly either hunting, maintaining food plots, fixing the road, and installing deer stands. The chancellor recognized that much of the testimony regarding the activities by both sides was somewhat confusing regarding the property lines, as well as the location of the road, a pond, the food plots, and the deer stands. The chancellor found that Orcutt did not prove this element, and we agree.

### 6. Peaceful

12

¶29. The chancellor found that no evidence was presented to suggest any breach of the peace between Orcutt and Chambliss; thus, the peaceful element was "sufficiently satisfied." However, we would disagree with the chancellor's findings since it was Orcutt's duty to prove this element by clear and convincing evidence.

¶30. Ultimately, the chancellor concluded that the quality of the acts was more important than the quantity. *See Walker*, 722 So. 2d at 1282 (¶19) ("The chancery court's findings of fact correctly made an analysis of the quality of evidence presented at trial, as opposed to the mere quantity of the evidence." (emphasis omitted)). In determining that Orcutt failed to meet his burden by clear and convincing evidence, the chancellor stated Orcutt's actions were not "open and visible enough to 'fly his flag' and the proof was not clear and convincing regarding some of those facts specifically addressed." As previously stated, the chancellor made detailed findings regarding Orcutt's adverse-possession claim. We find substantial evidence supports his findings. This issue is without merit.

### III. Statutory Damages

¶31. Orcutt argues that he was entitled to reimbursement of taxes plus interest from 1996-2015, not just from 1992-1995 as the chancellor found.

¶32. At the time of the tax sale in 1993, Mississippi Code Annotated section 27-45-3 stated that the amount required for redemption included

> the amount of all taxes for which the land was sold, with all costs incident to the sale, and five percentum damages on the amount of taxes for which the land was sold, and interest on all such taxes and costs at the rate of one percentum per month, or any fractional part thereof, from the date of such sale and *all taxes and costs that have accrued on the land since the sale*, with interest thereon from the date such taxes shall have accrued, at the rate of one

13

percentum per month, or any fractional part thereof . . . .

(Emphasis added). An amendment, effective March 27, 1995, eliminated the word "taxes"

from the italicized phrase, changing the phrase to "all costs that have accrued on the land

since the sale." The amendment also changed the one-percent interest rate to one-and-a-half

percent.

¶33. The chancellor also relied upon Mississippi Code Annotated section 27-45-27(1).

Section 27-45-27(1) recognizes that a tax-sale purchaser retains a lien on the property in the

event the tax sale is declared illegal on some other ground. At the time of the tax sale in

1993, section 27-45-27(1) stated in part:

> The amount paid by the purchaser of land at any tax sale thereof for taxes, either state and county, levee or municipal, and five percentum on said amount, and interest on the amount paid by the purchaser at the rate of one percent per month, or any fractional part thereof, and all expenses of the sale and registration, and all sums paid for taxes on the land after its sale and purchase, and interest thereon at the rate of one percentum per month, or any fractional part thereof shall be a lien on the land in favor of the purchaser and the holder of the legal title under him, by descent or purchase, if the taxes for which the land was sold were due, although the sale was illegal on some other ground.

The amendments, effective March 27, 1995, eliminated the five-percent assessment and

increased the interest owed to one-and-one-half percent per month.

¶34. The chancellor found as follows:

> This court will rule conservatively. This court finds that the version of the statutes in effect at the time of each tax sale applies. For the August 30, 1993 tax sale, section 27-45-3 provided that the redemption amount include taxes accrued on the land since the sale. This court could make the argument that Orcutt is entitled to all subsequent taxes paid, plus interest. However, there was an intervening tax sale on April 1, 1996, for tax year 1995. This sale was conducted after the March 27, 1995 amendments. Orcutt is charged with

14

> knowledge of the existing statutes which would include the amendments. Since the amended statutes do not include the subsequent taxes paid, Orcutt is not entitled to those amounts.

> Therefore, this Court finds that the redemption amount for the August 30, 1993 tax sale includes the taxes paid for years 1992, 1993, and 1994. The redemption amount for the April 1, 1996 tax sale includes the taxes Orcutt paid for tax year 1995. Computation of interest will be discussed below. Orcutt is, therefore, not entitled to repayment of the taxes he paid for tax years 1996 through 2014 and he is not entitled to interest on those amounts.

The chancellor noted that "none of the authority addresses the situation in today's case where a tax deed is found to be void twenty years after it was issued and the tax purchaser has dutifully and timely paid taxes on the property since the sale." Following the earlier version of the statutes, the chancellor then calculated the amount owed for tax years 1992, 1993, and 1994, including interest. Following the amended version of the statutes, the chancellor then calculated the amount owed for tax year 1995, including interest. The total amount with penalties and interest was $5,151.56.

¶35. We disagree with the chancellor's findings. The chancellor erroneously calculated the statutory damages based upon compound interest, and erroneously limited the damages to tax years 1992, 1993, and 1994. As noted above, the statutes do not explicitly authorize compound interest. "The general rule is that 'when interest is allowable, it is to be computed on a simple rather than compound basis in the absence of express authorization otherwise.'" *Exxon Corp. v. Crosby-Miss. Res. Ltd.*, 40 F.3d 1474, 1489 (5th Cir. 1995) (citing *Stovall v. Ill. Cent. Gulf R.R.*, 722 F.2d 190, 192 (5th Cir. 1984)). Therefore, we reverse and remand in part for the chancellor to recalculate the amount of statutory damages—based upon simple interest—on all of the taxes Orcutt has paid since the tax sale in 1993.

15

### IV.     Reimbursement for Work

¶36.    Orcutt claims he is entitled to reimbursement for the improvements he made on the property over the years.  In his additional briefing before the chancellor regarding statutory damages, Orcutt stated that he spent $15,689.89 on creating and maintaining the two food plots.  However, the chancellor had limited the additional briefing to evidence in the trial record, and Orcutt did not offer any proof regarding the amount of his improvements during trial.  Thus, the chancellor denied Orcutt relief.  We find no abuse of discretion.

¶37.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART**.

**IRVING, P.J., CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.  GRIFFIS, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WILSON AND TINDELL, JJ.; BARNES, J., JOINS IN PART.**

**GRIFFIS, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶38.    Here, the majority affirms a judgment that concludes a parcel of property is ownerless and  awards a monetary judgment against no one.  I find that there are fundamental errors in the chancellor's judgment that require we reverse and remand this case for a new trial.  I therefore respectfully dissent from the decision to affirm the chancellor's judgment.  I do however concur, although for different reasons, with the majority's decision to reverse and remand the chancellor's final judgment on the award of statutory damages.

### I.     *Appropriate Standard of Review*

¶39.    The majority does not identify an applicable standard of review.  Appellate courts must always begin with the standard of review, which guides the court's analysis.  There is no legal basis for this Court to examine the record and then only declare that we agree with

the chancellor.

¶40. The chancellor made expressly clear, in both the February 2, 2016 judgment and the May 23, 2016 final judgment, that he granted Chambliss's motion for an involuntary dismissal. This decision determines the applicable standard of review.

¶41. At the close of Orcutt's case-in-chief, Chambliss's attorney then made a motion for a directed verdict. The chancellor did not rule; rather, he took it under advisement. The trial continued, and Chambliss offered his case-in-chief, which consisted of the defense to Orcutt's claims and his claim for adverse possession. At the end of the trial, the chancellor again took the case under advisement.

¶42. Six months later, on February 2, 2016, the chancellor entered a thirty-three-page "Judgment" that ruled:

> IT IS THEREFORE ADJUDGED, DECREED AND ORDERED that the ***defendant's motion for an involuntary dismissal regarding the tax sale and resulting tax deed is granted.*** The tax deed is hereby set aside.
>
> IT IS FURTHER ADJUDGED, DECREED AND ORDERED that the plaintiff has failed to prove by clear and convincing evidence that he adversely possessed the subject property. Therefore, the plaintiff[']s Complaint to Quite [sic] and Confirm Tax Title is denied.
>
> IT IS FURTHER ADJUDGED, DECREED AND ORDERED that the parties shall file briefs regarding the issue of statutory damages within thirty (30) days of the date of the entry of this Judgment.

(Emphasis added). This was not a "final" judgment because the chancellor ordered supplemental briefing.

¶43. After supplemental briefs were received, the chancellor entered a "Final Judgment" on May 23, 2016, that ruled:

17

IT IS THEREFORE ADJUDGED, DECREED AND ORDERED that the ***defendant's motion for an involuntary dismissal regarding the tax sale and resulting tax deed is granted***. The tax deed is hereby set aside.

IT IS FURTHER ADJUDGED, DECREED AND ORDERED that the plaintiff has failed to prove by clear and convincing evidence that he adversely possessed the subject property. Therefore, the plaintiff[']s Complaint to Quite [sic] and Confirm Tax Title is denied.

IT IS FURTHER ADJUDGED, DECREED AND ORDERED that the true owner of the subject property, whether that be Charlie Chambliss or someone else, is hereby ordered to pay Eddie Orcutt $5,151.56 plus interest thereon as discussed herein. Said amount shall be paid within ninety (90) days of the entry of this Final Judgment.

IT IS FURTHER ADJUDGED, DECREED AND ORDERED that Eddie Orcutt retains a lien on the subject property in the amount of $5,151.56 plus interest thereon as discussed herein. If that amount, plus interest, is not paid within ninety (90) days of the entry of this Final Judgment, Orcutt may pursue the remedies available to him pursuant to Section 27-45-27 of the Mississippi Code.

IT IS FURTHER ADJUDGED, DECREED AND ORDERED that the Chancery Clerk of Jefferson County, Mississippi is hereby authorized and directed to record a certified copy of this Final Judgment and a certified copy of the Judgment, entered in this matter on February 22, 2016, in the land records of said county and to make a marginal notation on the Tax Deed herein to evidence the cancellation and referencing the recording information for this Final Judgment.

(Emphasis added). In both judgments, the chancellor expressly stated that he granted Chambliss's motion for an involuntary dismissal.

¶44.   In *Ladner v. Stone County*, 938 So. 2d 270, 273 (¶¶9-10) (Miss. Ct. App. 2006), this Court held:

We begin by noting that the proper motion was not one for a directed verdict. Instead, in a bench trial, the proper motion to make at the close of plaintiff's case-in-chief is a motion for involuntary dismissal under Rule 41(b) of the Mississippi Rules of Civil Procedure. Rule 50(a) directed verdicts are reserved

18

only for jury trials. This distinction must be understood, because the standard of review for a dismissal is different than that for a directed verdict.

Our consideration of this appeal will be based on the correct Rule 41(b) standard of review. In considering a motion for involuntary dismissal under Rule 41(b), the trial court should consider "the evidence fairly, as distinguished from in the light most favorable to the plaintiff," and the judge should dismiss the case if it would find for the defendant. We must apply the substantial evidence/manifest error standard to an appeal of a grant or denial of a motion to dismiss pursuant to [Rule] 41(b). Where there arguably is evidence that a party might be entitled to a judgment, the court errs in dismissing the case. We defer to findings of fact and review legal conclusions de novo.

(Internal citations omitted).

¶45. The majority does not address the fact that the chancellor granted the motion for an involuntary dismissal. Rule 41(b) provides in relevant part:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court may then render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

The only remedy for a Rule 41(b) motion for an involuntary dismissal is to "dismiss" the plaintiff's complaint. In a bench trial, the judge considers whether the plaintiff is entitled to a judgment based on the evidence presented by the plaintiff. If the evidence does not entitle the plaintiff to a judgment, the chancellor may then grant the involuntary "dismissal."

¶46. Rule 41(b) does not anticipate that the judge will take the motion under advisement and later render a final judgment that both grants and denies certain claims asserted by the plaintiff. In my opinion, the judge should *never* take a Rule 41(b) motion for an involuntary dismissal or a Rule 50(a) motion for a directed verdict under advisement; such motion should

19

be ruled upon before the case proceeds. The purpose for these rules is to allow a procedure for the early termination of the case based on the lack of evidence by the plaintiff.

¶47. It was a fundamental procedural error for the chancellor to take Chambliss's Rule 41(b) motion for an involuntary dismissal under advisement, to later grant the motion, and then award any relief other than the dismissal of Orcutt's complaint. There is certainly no authority that would allow the chancellor to grant the Rule 41(b) involuntary dismissal and then award the plaintiff damages.[3]

## II. *Chambliss Disavows Ownership or Any Rights to the Property*

¶48. Next, the majority does not address the portion of the final judgment where the chancellor found that Chambliss disavowed his ownership or any rights to the property. The majority does not address this issue either.

¶49. Orcutt's first issue challenged the chancellor's rulings that recognized Chambliss's standing to contest Orcutt's tax sale and deed. Orcutt argues that Chambliss did not have standing and relies on Chambliss's pleading where he disavowed ownership of the property.

¶50. At trial, Chambliss testified that he owned the property, that he did not receive notice of the tax sale, and that he had met the elements of adverse possession. The chancellor did not rule on Chambliss's counterclaim for adverse possession.[4]

---

[3] The majority affirms the award of statutory damages to Orcutt, but reverses only for a recalculation.

[4] The chancellor "did not consider Chambliss's alternative claim of adverse possession because a property owner cannot adversely possess his own property." Final J. 4. This finding conflicts with the chancellor's later finding that assesses statutory damages against the owner of the property, but the chancellor finds that "the true owner of the subject property, whether that be Charlie Chambliss or someone else, is hereby ordered to pay Eddie

¶51. In the February 2, 2016 judgment, the chancellor determined that Orcutt failed to prove the tax sale was valid because Chambliss was not given notice of the sale or expiration of the redemption period. Because he was the owner, the chancellor found "it is undisputed that Charlie Chambliss never received proper notice of the tax sale." Based in part on this finding, the chancellor decided to grant Chambliss's motion for an involuntary dismissal.

¶52. In the May 23, 2016 final judgment, the chancellor found:

> Throughout these proceedings—until his most recent submission—Chambliss has asserted that he is the record owner of the subject property . . . . This Court has not, and cannot, perform a title search; however, from the evidence received in these proceedings, it appears that Chambliss is the record owner of the subject property.

The chancellor continued:

> [O]n April 13, 2016, Chambliss submitted Charlie Chambliss' Response to Mr. Orcutt's Motion for the Assessment of Statutory Damages. ***This Court is baffled by much of what is included in this document. Chambliss, for the first time, attempts to argue that he is not the owner of the subject property. Chambliss asserts that a decree signed by a chancellor in another matter "extinguished any interest Mr. Chambliss may have had in the property."*** He asserts that *he "has no interest in the property at issue in case."* [sic]. *Id.* p. 2. *He states that this Court established that Chambliss has no interest in the property at issue in this case. Id. He also now argues that he had no standing to bring his counterclaim.*
>
> This Court did not find anything of the sort. . . . As stated above, this Court has not performed, and cannot perform, a title search; however, from the evidence received in these proceedings, it appears that Chambliss is the record owner of the subject property.
>
> Chambliss agrees that the "owner-redeemer" owes the tax sale purchaser statutory damages . . . . He confesses that Orcutt is entitled to statutory damages, however, he disputes the amount submitted by Orcutt.

Orcutt [statutory damages] . . . ." I cannot affirm a judgment that in one section finds that Chambliss owns the property and in another says he does not.

(Emphasis added; internal citations omitted). Then, on page 28 of the final judgment, the chancellor held:

> Orcutt did what this Court hopes all property owners would do—timely pay their taxes. Without the payment of taxes, the government would cease to function. Pursuant to the instructions in *Rebuild Am., LLC[] v. McGee*[, 49 So. 3d 156, 160 (¶12) (Miss. Ct. App. 2010)] . . . , this Court had to "(1) calculate the amount of statutory damages and (2) order the [owner] to pay [the purchaser] that amount." *Id.* at 160. This Court finds that, applying the version of Section 27-45-3 in effect at the time of each tax sale, the amount of statutory damages is $5,151.56. Interest, at the rates discussed above, shall continue to accrue until said sum is paid. ***The true owner of the subject property, whether that is Chambliss or someone else, is hereby ordered to pay that amount to Orcutt within ninety days of the entry of this Final Judgment***.
>
> Pursuant to Section 27-45-27 of the Mississippi Code, "a tax-sale purchaser retains a lien on the property in the event that the sale is declared 'illegal on some other ground.'" *Sass Muni V, LLC*, 170 So. 3d 441, 447 (¶21) (Miss. 2015) (quoting Miss. Code Ann. § 27-45- 27(1) (Rev. 2010)). In *High Sierra Tax Sale Properties, LLC*, [188 So. 3d 1224, 1229-30 (¶18) (Miss. Ct. App. 2015)], the Court of Appeals agreed with the tax purchasers that "[t]o the extent the tax deeds and sales are set aside, the interest of [the tax sale purchaser] continues to be a lien on the subject property until all redemption amounts are paid to [the tax sale purchaser]." *Id.* at 4. The tax sale in this matter was declared void by this Court in the February 22nd Judgment. Orcutt retains a lien on the subject property in the amount of $5,151.56 plus interest as discussed herein. If that amount, plus interest, is not paid within ninety days of the entry of this Final Judgment, Orcutt may pursue the remedies available to him pursuant to Section 27-45-27 of the Mississippi Code.
>
> . . . .
>
> IT IS FURTHER ADJUDGED, DECREED AND ORDERED that ***the true owner of the subject property, whether that be Charlie Chambliss or someone else, is hereby ordered to pay Eddie Orcutt*** $5,151.56 plus interest thereon as discussed herein. Said amount shall be paid within ninety (90) days of the entry of this Final Judgment.

(Emphasis added).

22

¶53. Like the chancellor, I too find Chambliss's disavowance of ownership to be "baffling." I also find the chancellor's ruling to be equally "baffling," and reversible error.

¶54. As discussed above, we should start with the standard of review. The only way this Court can affirm the chancellor is if we find that the chancellor's ruling was not based on a Rule 41(b) involuntary dismissal but instead was a final decision on the merits, which is directly contrary to the express statement of the chancellor. Nevertheless, despite this minor problem, "[a]n appellate court will not disturb the factual findings of a chancellor when supported by substantial evidence unless we can say with reasonable certainty that the chancellor abused his discretion, [the decision] was manifestly wrong [or] clearly erroneous, or [the chancellor] applied an erroneous legal standard." *Jones v. Graphia*, 95 So. 3d 751, 753 (¶6) (Miss. Ct. App. 2012). However, questions of law are reviewed de novo. *Id.*

¶55. The chancellor's "Judgment" and "Final Judgment" are internally inconsistent. In one part, the chancellor finds that the tax sale was void because Chambliss was the owner and he did not receive notice. Yet, in another part, the chancellor determines that Orcutt is entitled to statutory damages, and orders that "the true owner of the subject property, whether that be Charlie Chambliss or someone else, is hereby ordered to pay Eddie Orcutt . . . ." If Chambliss was not the "true owner of the property" then he is not entitled to notice of the tax sale.

¶56. Chambliss was the only person to answer the complaint and challenge Orcutt's title. Thus, as to anyone else, Orcutt was entitled to a default judgment that confirmed his title. As to Chambliss, the chancellor had the dispute before him whether Chambliss or Orcutt

23

owned the property. Once Chambliss disavowed ownership of the property, he no longer had standing to contest Orcutt's ownership.

¶57. I find that the chancellor was manifestly wrong and clearly erroneous to order "that the true owner of the subject property, whether that be Charlie Chambliss or someone else, is hereby ordered to pay Eddie Orcutt $5,151.56." In this finding, the chancellor doubted Chambliss's ownership and right to the property.

¶58. Nevertheless, the chancellor repeatedly stated that Orcutt has an ownership interest in the property through the tax sale and the resulting tax deed. Orcutt sought to establish his ownership once and for all by filing his complaint to quiet title and confirm tax title. Orcutt properly filed his lawsuit and served Chambliss with process, along with "any and all other persons claiming a legal or equitable interest in the property."

¶59. I find that the chancellor committed reversible error in the final judgment. If Chambliss was the owner of the property and was entitled to notice of the tax sale, then he owes Orcutt the amount of statutory damages. If Chambliss does not own the property, he has no standing to challenge Orcutt's petition, and Orcutt would be entitled to an order that quieted and confirmed his title to the property. For these reasons, I would reverse the chancellor's judgment and remand this case for a new trial.

### III. Statutory Damages

¶60. I concur with the majority's finding to reverse the chancellor in part and remand for a recalculation of statutory damages.

¶61. The chancellor made this finding to award Orcutt statutory damages:

As a court of equity, this Court recognizes that since the subject tax deed has been set aside, Mr. Orcutt may be entitled to statutory damages. *See e.g.*, Miss. Code Ann. §§ 27-45-3; 27-45-27. In *McGee*, the Court of Appeals affirmed a chancellor's judgment setting aside a tax sale. *McGee*, 49 So. 3d at 160 [(¶9)]. Since the chancellor in that matter failed to address the purchaser's statutory right to damages, the matter was remanded to the chancery court to "(1) calculate the amount of statutory damages and (2) order the [owners] to pay [the purchaser] that amount." *Id.* (citing *Lawrence v. Rankin*, 870 So. 2d 673, 676-77 (¶¶19-22) (Miss. Ct. App. 2004)); *Rebuild Am., Inc. v. Wright*, 27 So. 3d 1202, 1205 [(¶14)] (Miss. Ct. App. 2010)).

¶62. The chancellor correctly noted that there were two statutes that justify the award of statutory damages to Orcutt: Mississippi Code Annotated sections 27-45-3 and 27-45-27, and both were amended in 1995. The chancellor began his review of statutory damages with this finding:

Calculating the damages due to Orcutt is a far more complex issue than originally anticipated. This issue has presented numerous dilemmas and this Court has not found much guidance. This is particularly so since several issues appear to be matters of first impression before the appellate courts of Mississippi and this Court has found conflicting authority for other issues. The issues before this Court include: What version of the statutes apply? What is the amount of taxes? What is the interest rate? Should the Court calculate simple interest or compound interest? Because this case involves matters of first impression, this Court will rule conservatively. The result seems unfair to Orcutt[,] who did what society hopes all citizens will do: timely pay taxes. But this Court's hands are tied. The appellate courts or the Legislature may want to consider creating a remedy which would make citizens like Orcutt whole.

¶63. The chancellor reviewed section 27-45-3, as amended, effective March 27, 1995:

The owner . . . or any person interested in the land sold for taxes, may redeem the same . . . at any time within two (2) years after the day of sale, by paying to the chancery clerk, regardless of the amount of the purchaser's bid at the tax sale, the amount of all taxes for which the land was sold, with all costs incident to the sale, and five percent (5%) damages on the amount of taxes for which the land was sold, and interest on all such taxes and costs at the rate of one and one-half percent (1-½%) per month . . . from the date of such sale, and all costs

that have accrued on the land since the sale, with interest thereon from the date such costs shall have accrued, at the rate of one and one-half percent (1-½%) per month . . . . Upon such payment to the chancery clerk as hereinabove provided, he shall execute to the person redeeming the land a release of all claim or title of the state or purchaser to such land . . . . Said release when so executed and attested shall operate as a quitclaim on the part of the state or purchaser of any right or title under said tax sale.

¶64. The chancellor also reviewed section 27-45-27, as amended, effective March 27, 1995:

(1) The amount paid by the purchaser of land at any tax sale thereof for taxes, either state and county . . . and interest on the amount paid by the purchaser at the rate of one and one-half percent (1-½%) per month . . . and all expenses of the sale and registration, thereof shall be a lien on the land in favor of the purchaser and the holder of the legal title under him, by descent or purchase, if the taxes for which the land was sold were due, although the sale was illegal on some other ground. The purchaser and the holder of the legal title under him by descent or purchase, may enforce the lien by bill in chancery, and may obtain a decree for the sale of the land in default of payment of the amount within some short time to be fixed by the decree. In all suits for the possession of land, the defendant holding by descent or purchase, mediately or immediately, from the purchaser at tax sale of the land in controversy, may set off against the complainant the above-described claim, which shall have the same effect and be dealt with in all respects as provided for improvements in a suit for the possession of land.

¶65. The effect of sections 27-45-3 and 27-45-27 is to charge the landowner interest on the amount of the tax paid by another at the sale. However, the chancellor determined that Orcutt was only entitled to an award of ad valorem taxes and statutory damages on the taxes paid for tax years 1992 through 1995. Orcutt claims that he was entitled to recover the ad valorem taxes and statutory damages on the taxes paid for tax years 1992 through 2016. I am of the opinion the chancellor was in error to only award statutory damages from 1992 through 1995. Orcutt was entitled to statutory damages on the taxes paid for tax years 1992

26

through 2016.

¶66. The chancellor also considered whether the interest should be calculated as simple or compound interest. The chancellor concluded that the interest for statutory-damages purposes should be compounded, but did not state whether it was to be compounded daily, monthly, or yearly. This is a fundamental problem and reversible error simply because neither version of section 27-45-3 or section 27-45-27 contemplates compounded interest. These statutes consider the calculation of simple interest because they compute interest (at either 1% or 1½%) for up to twenty-four months during the two-year redemption period. *See* Miss. Code Ann. § 27-45-3. Then, under section 27-45-27, if there is no redemption but the tax sale is later set aside, these amounts become a lien on the property. This statutory tax-sale structure was established so that if the owner of the property is allowed to set aside the tax sale, the purchaser at the tax sale will be made whole by receiving the amount of the tax paid and the "interest on all such taxes and costs at the rate of one and one-half percent (1-½%) per month . . . from the date of such sale." Miss. Code Ann. § 27-45-3.

¶67. On $261.99 of taxes paid, the chancellor awarded $4,889.47 in interest. The chancellor clearly used a compound-interest table, but did not identify whether interest was compounded annually, monthly, or otherwise.

¶68. I am of the opinion that neither section 27-45-3 nor section 27-45-27 can be read to authorize compounding interest. For this reason, I concur with the majority's decision to award statutory damages and would reverse and remand this case for the chancellor to make the proper calculation of statutory damages. For the reasons previously set forth, I am only

27

puzzled by who this monetary judgment is against and who the majority expects to be responsible for this judgment.

**WILSON AND TINDELL, JJ., JOIN THIS OPINION.  BARNES, J., JOINS THIS OPINION IN PART.**