# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-01132-COA

| | |
|---|---|
| **MELCHESTER PHILLIPS JR., SARAH PHILLIPS, KEITH PHILLIPS, NIKKI HOBSON, GAIL CAMPER, CAROLYN MOJGANI, CARLOS WILBORN, CHRISTOPHER WILBORN, KIM WILBORN, MICHAEL WATTS, MARK WATTS, TRACY WILBORN, EDDIE YOUNG III, CHERYL YOUNG, CAROL SUTTON, LYNETTE MYERS, KEVIN SMITH, MARY SMITH, MORRIS LOUISVILLE, SHANINA BRIDGES, NATASHA SMITH, BRIAN SMITH, NAKIA JUPITER, AHAMAD SMITH, JESSE BOUCHEE JR., STEPHANIE RAHNAMAH, LARRY BOUCHEE, THOMAS BOUCHEE, HEIRS OF GLORIA JEAN BOUCHEE, HEIRS OF MARIAN BOUCHEE AND HEIRS OF MORRIS SMITH** | **APPELLANTS** |

**v.**

| | |
|---|---|
| **FORREST COUNTY INDUSTRIAL PARK COMMISSION** | **APPELLEE** |

| | |
|---|---|
| DATE OF JUDGMENT: | 09/15/2023 |
| TRIAL JUDGE: | HON. CHASE FORD MORGAN |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | URSULA KATRINA MITCHELL |
| ATTORNEY FOR APPELLEE: | CHRISTOPHER M. HOWDESHELL |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 01/21/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND McCARTY, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.    The Appellants[1] appeal from the Forrest County Chancery Court's judgment finding

---

    [1] Melchester Phillips Jr., Keith D. Phillips, Nikki Devona Hobson, Sarah Y. Phillips, Gail Camper (also known as Gail Louise Camper), Mary F. Bouchee, Nichole Gabrielle

that the Forrest County Industrial Park Commission (the Commission) acquired title to two acres of land by adverse possession and dismissing the Appellants' counterclaims for trespass, unlawful withholding of the property, and unjust enrichment.

¶2. Finding no error, we affirm the chancery court's judgment.

**FACTS**

¶3. This case involves two acres of real property located in Forrest County, Mississippi. On October 13, 1945, D.H. Baker executed an administrator's deed conveying the two acres to Luther Bouchee and Carrie Bouchee. The deed set forth the following legal description of the land:

> Begin at the Southwest corner of the [northeast quarter] of the [northwest quarter] of the [southwest quarter] of Section 35, Township 4 North, Range 13 West, and run N for 127 feet; thence East for 212.5 feet; thence North for 205 feet; thence East for 181.1 feet; thence South for 332 feet; thence West for 393.6 feet to the point of beginning, containing 2 acres, more or less, and being in the [northeast quarter] of the [northwest quarter] of the [southwest quarter] of Section 35, Township 4 North, Range 13 West.

¶4. Luther predeceased Carrie, and Carrie died in 1971. Carrie's will was admitted to probate in 1972. In her will, Carrie bequeathed all her property to three grandchildren: Donald Luther Moore, Melchester Phillips, and Gail Camper.

¶5. In her will, Carrie did not expressly list any real or personal property that she owned.

---

Commodore, Yolanda Bouchee, Beverly Henderson Bouchee, Carolyn Mojgani, Thomas Gerald Bouchee, Jessie Willie Bouchee, Carol Sutton, Lynnette Myers, Kevin Smith, Eddie Young Sr., Eddie Young Jr., Cheryl Young, Kim Wilborn, Tracie Wilborn, Carlos Wilborn, Wayne Bouchee, Mark Watts, Michael Watts, any and all unknown heirs of Luther Bouchee, Donald Luther Moore, Melchester Phillips Sr., Cleveland D. Bouchee, Curtisa Phillips, Evelyn Bouchee, Clifton Bouchee, Jessie Bouchee, Louise Bouchee, Gloria Jean Bouchee, Lola Bouchee, Morris Smith, Margaret Bouchee, Lillian Bouchee, and Marian Bouchee are the Appellants.

The petition to probate Carrie's estate provided that the only real property in Carrie's estate consisted of "a modest dwelling house and [real] property located in Forrest County, Mississippi," and the petition set forth the legal description of this real property. All the parties agree that the real property listed in the petition to probate Carrie's estate is not the two acres at issue on appeal. The chancery court entered an order admitting Carrie's will to probate, and the order reflected that Carrie's estate consisted of "a modest dwelling house and [real] property located in Forrest County, Mississippi[.]" The order further specified that the real property listed in the order "is all of the real property of the Estate."

¶6. In 1977, the administrator[2] of Carrie's estate filed a petition to close the estate. In the petition, the administrator averred that the three beneficiaries listed in Carrie's will had failed and refused to respond to the attorneys involved, and the whereabouts of two beneficiaries were unknown. The administrator also asserted that "there has been no money received into this Estate and that no claims have been probated and that the time for probation of claims has long since expired." In response to the petition, the chancery court entered an order closing Carrie's estate, subject to being "reopened upon petition of an interested party and payment of all court costs." The record reflects that at the time of trial, Carrie's estate had not been reopened, and there had been no determination of heirship.

¶7. On November 30, 1978, the Hattiesburg Area Development Corporation executed a warranty deed conveying nineteen acres of real property to the Commission. Although the

---

[2] Carrie did not appoint an executor to her will, and the chancery court ultimately issued letters of administration *cum testamento annexo* to Oliver Henderson, Carrie's brother-in-law.

two acres Carrie owned were situated within the nineteen-acre parcel conveyed by the 1978 deed, the deed specifically excepted these two acres. However, over the next four decades, the Commission executed various conveyances and easements that included the two acres at issue as property of the Commission. The record reflects that the two acres at issue are currently located within the Forrest County Industrial Park (Industrial Park).

¶8. In approximately 2020, a company showed interest in buying a parcel of property in the Industrial Park that included the two acres at issue. During the process of ensuring that the property could be properly transferred to the buyer, the Commission discovered that it did not have clean title to the two acres at issue.

¶9. In April 2022, the Commission filed a complaint against the Appellants, all of whom are either potential heirs of Luther and Carrie Bouchee or potential heirs of their descendants, to confirm title to the two acres of real property. In its complaint, the Commission acknowledged that the two acres at issue were never formally conveyed to the Commission; however, the Commission asserted that it had acquired title by adverse possession pursuant to Mississippi Code Annotated section 15-1-13 (Rev. 2019). The chancellor later allowed the Commission to file an amended complaint adding additional parties.

¶10. The Appellants filed their answer, affirmative defenses, and counterclaim[3] alleging

---

[3] Only the following parties asserted the counterclaim: Christopher Wilborn, Tracy Wilborn, Mustafa M. Shabazz (formerly known as Mark Watts), Kim Wilborn, Carlos Wilborn, Michael Watts, Eddie Young III, Cheryl Young, Carol Sutton, Lynette Myres, Kevin Smith, Carolyn Mojgani, Mary Smith, Morris Louisville, Shanina Bridges, Natasha Smith, Brian Smith, Nakia Jupiter, Ahman Smith, Jesse Bouchee, Larry Bouchee, Stephanie Rahnama, Thomas Bouchee, Gail Camper (also known as Gale Louise Camper), Sarah Y. Phillips, Keith D. Phillips, Nikki Devona Hobson, and Melchester Phillips Jr.

4

trespass, unlawfully withholding possession of the property, and unjust enrichment.[4]

¶11. On July 6, 2023, the chancellor held a trial on the Commission's complaint and the Appellants' counterclaims. The chancellor heard testimony from Marc Broome, a professional engineer; Todd Jackson, the executive vice president of the Area Development Partnership (ADP); and seven of the Appellants.

¶12. Jackson testified that the ADP staff serves as the economic and development staff for the Commission. Jackson explained that in his role as Executive Vice President, he is responsible for preparing property located in the Industrial Park for success in business development. Jackson testified that in approximately 2020 a company had shown interest in a parcel of property in the Industrial Park, and the parcel included the two acres at issue. Jackson explained that based on the company's interest in the parcel of property, he became involved in laying out a site plan, which included performing title searches to ensure that the property could be properly transferred to the buyer. Jackson testified that in late 2021 or early 2022, while performing these title searches, the Commission first discovered that it did not have clean title to the two acres at issue

¶13. The Appellants testified that they had no knowledge of the 1945 deed conveying the two acres at issue to Luther and Carrie. Notably, the Appellants also testified that they had no knowledge that Luther and Carrie owned the two acres at issue until the Appellants were

---

[4] The record also reflects that in August 2022, the Commission filed an "Application to Clerk for Entry of Default with Supporting Affidavit" against several Appellants who failed to answer, defend, or otherwise plead. *See* M.R.C.P. 55. A Clerk's entry of default was entered on August 9, 2022, and the Commission filed a motion for default judgment the following day. The chancellor executed a default judgment against the Appellants who failed to answer.

served with the Commission's complaint for adverse possession. The Appellants acknowledged that Carrie did not list the property in her will, and the Appellants admitted that they did not possess any evidence proving that Carrie still owned the two acres at issue when she died in 1971.

¶14. The parties submitted numerous exhibits into evidence, including the 1945 administrative deed conveying the two acres at issue to Luther and Carrie; Carrie's last will and testament; the petition to probate Carrie's will; the order admitting Carrie's will to probate; the order closing Carrie's estate; the November 30, 1978, warranty deed conveying nineteen acres of real property to the Commission, excepting the two acres at issue; a 1983 subdivision plat of the Industrial Park that included the two acres at issue as property of the Industrial Park; a September 25, 1985, warranty deed executed by the Commission and conveying an easement to the City of Hattiesburg for laying, constructing, and maintaining a water line in and across the nineteen-acre parcel, including the two acres at issue; Protective Covenants for the Hattiesburg Industrial Park adopted in August 1988; a January 15, 2001 warranty deed conveying certain real property from the Commission to the Board of Trustees of the Pearl River Community College (PRCC) District, including the two acres at issue; and an April 9, 2002, warranty deed conveying the same real property, including the two acres at issue, from the Board of Trustees of PRCC District back to the Commission.

¶15. After all the witnesses testified, counsel for the Commission moved to dismiss the Appellants' counterclaims based on their lack of standing. The Commission argued that the Appellants failed to prove any ownership of the two acres at issue and also failed to provide

6

sufficient credible evidence as to any damages for their claims of trespass, unlawfully withholding possession of property, and unjust enrichment. Upon questioning by the chancellor, counsel for the Appellants admitted that there had been no heirship proceedings to determine the heirs of Luther and Carrie. Counsel for the Appellants requested that the chancellor hold the adverse possession proceedings in abeyance and allow the Appellants to initiate heirship proceedings. The chancellor denied this request as untimely.

¶16. After the trial, the chancellor entered a very thorough findings of fact and conclusions of law in the final judgment, determining that the Commission met its burden of proving by clear and convincing evidence that it acquired title to the two acres at issue by adverse possession. Because the chancellor found in favor of the Commission on its adverse possession claim, the chancellor dismissed the Appellants' counterclaims.

¶17. The Appellants now appeal.

**STANDARD OF REVIEW**

¶18. When reviewing the decisions of a chancellor in this context, this Court applies a limited standard: "we will accept a chancellor's findings of fact as long as the evidence in the record reasonably supports those findings. In other words, we will not disturb the findings of a chancellor unless those findings are clearly erroneous or an erroneous legal standard was applied." *Frazier v. Frazier*, 31 So. 3d 1218, 1219-20 (¶4) (Miss. Ct. App. 2009). "The chancellor, as the trier of fact, evaluates the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony." *Id.* at 1220 (¶4). "We review questions of law de novo." *Id.*

7

**DISCUSSION**

¶19. The Appellants argue that the chancellor erred in finding in favor of the Commission on its claim of adverse possession. The Appellants also submit that the chancellor erred by dismissing the Appellants' counterclaims for trespass, unlawful withholding possession of the property, and unjust enrichment.

### I. Adverse Possession

¶20. Caselaw interpreting Mississippi Code Annotated section 15-1-13(1) provides that "a party may claim title to property after ten years' actual adverse possession." *Anderson v. Jackson*, 338 So. 3d 629, 641 (¶25) (Miss. Ct. App. 2022). A party claiming title to property by adverse possession must prove by clear and convincing evidence that his possession of the property was "(1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." *Id*. "Proof of the elements of adverse possession can overlap." *Id*.

¶21. On appeal, the Appellants argue that the Commission failed to prove four of the elements of adverse possession by clear and convincing evidence: claim of ownership, actual or hostile, open, notorious and visible, and continuous and uninterrupted for a period of ten years. Therefore, we will limit our discussion to these four elements.

#### A. Under Claim of Ownership

¶22. Section 15-1-13 provides that an adverse possessor must possess the subject property under a claim of ownership for a ten-year period. Miss. Code Ann. § 15-1-13. Here, the chancellor found that the Commission "has clearly acted as the owner and possessor of the

subject two acres since September 25, 1985, when it conveyed a utility easement to The City of Hattiesburg and did not specifically except the subject two acres." In support of her finding, the chancellor referenced testimony regarding the "maintenance, mulching, bush hogging, engineering surveys, cultural surveys, marketing the property for business development, and the various other acts" performed by the Commission since 2015. The chancellor determined that these actions openly demonstrated the Commission's "stake of claim" over the property.

¶23. The Appellants argue that because the Commission failed to put the record owners of the two acres on notice that the Commission was adversely possessing the property, the chancellor erred in her finding that the Commission met its burden as to the claim of ownership element. The Appellants maintain that none of the heirs or descendants of Luther and Carrie had any knowledge of any adverse claim on the two acres at issue until they were served with the Commission's complaint for adverse possession in 2022.

¶24. However, as acknowledged by the chancellor, the record is unclear whether Carrie Bouchee still owned the two acres at issue at the time of her death in 1971. The 1945 administrative deed clearly conveyed the two acres at issue to Luther and Carrie Bouchee. Luther predeceased Carrie, and he apparently died intestate.[5] In 1971, Carrie executed a will in which she gave, devised, and bequeathed her property to three of her grandchildren. Carrie's will did not specify any real property that she owned at that time.

¶25. Carrie died in 1971, and her will was admitted to probate in 1972. The petition to

_____

[5] At trial, Luther's granddaughters testified that Luther did not have a will.

9

probate Carrie's will stated that the only real property in Carrie's estate consisted of "a modest dwelling house and [real] property located in Forrest County, Mississippi[.]" The petition included a description of the real property, and, as stated, the real property listed in the petition is not the two acres at issue. The chancery court entered an order admitting Carrie's will to probate, and the order reflected that Carrie's estate consisted of "a modest dwelling house and [real] property located in Forrest County, Mississippi[.]" The order further specified that the real property listed in the order "is all of the real property of the Estate."

¶26. In 1977, the administrator of Carrie's estate petitioned the chancery court to close Carrie's estate "subject to being reopened upon the Petition of an interested party[.]" The petition stated since the opening of Carrie's estate, no claims had been probated. The chancery court entered an order closing Carrie's estate, specifying that the estate could be reopened upon petition of an interested party and payment of all court costs.

¶27. At the hearing below, the Appellants confirmed that Carrie's estate had never been reopened. The chancellor noted that Carrie's will did not expressly mention the two acres at issue, and she inquired as to whether Carrie's estate file contained any documents identifying the two acres at issue as part of Carrie's estate at the time the estate was probated. Counsel for the defendants responded, "No." The chancellor expressed concern that the estate file did not contain a deed or other documents showing that the two acres at issue were owned by Carrie at the time that the administrator filed the petition to probate Carrie's will.

¶28. In her final judgment, the chancellor found that the Commission "properly noticed

10

every would-be and/or potential heir of the estates of Luther of Carrie Bouchee," but the chancellor clarified that any "would-be heirs" were responsible for pursing a claim "to establish their heirship rights and potential ownership interests in any assets or property that would have been part of" the estate of Luther and Carrie. The chancellor determined that "[n]one of this was accomplished."

¶29. Nonetheless, the lack of heirship determinations and the Appellants' ignorance as to their potential heirship rights to the two acres at issue are not sufficient to defeat the Commission's claim for adverse possession. The purpose of the adverse-possession statute is "to resolve the problem of inattentive landowners who ignore their property over a long period of time." *Buford v. Logue*, 832 So. 2d 594, 601 (¶16) (Miss. Ct. App. 2002). The supreme court has also stated that "ignorance of his or her legal rights by a person against whom land is claimed by adverse possession is no defense against the running of the statutes of limitations[.]" *Bonds v. Bonds*, 226 Miss. 348, 361, 84 So. 2d 397, 401 (1956).

¶30. Additionally, "[w]hen determining whether an adverse possessor has staked a proper claim of ownership," the relevant inquiry focuses on whether the actions of the would-be possessor—here, the Commission—were sufficient to "fly [its] flag over the lands" in a manner to put the actual owners on notice that the property was being "held under an adverse claim of ownership." *Franco v. Ferrill*, 342 So. 3d 1176, 1188-89 (¶30) (Miss. Ct. App. 2022). "The possession must be sufficient to put another on notice, actual or *imputable*, of an adverse claim to his property." *Trotter v. Gaddis & McLaurin Inc.*, 452 So. 2d 453, 457 (Miss. 1984). We must also keep in mind that "both the quality and quantity of possessory

11

acts necessary to establish a claim of adverse possession may vary with the characteristics of the land." *Walker v. Murphree*, 722 So. 2d 1277, 1281 (¶16) (Miss. Ct. App. 1998). This Court has held that "[a]dverse possession of 'wild' or unimproved lands may be established by evidence of acts that would be wholly insufficient in the case of improved or developed lands." *Id.*

¶31. At trial, Jackson testified that for many years, the property at issue was "raw land." Jackson explained that ADP, which serves as the economic and development staff for the Commission, prefers to leave property in the Industrial Park "forested for as long as possible" until they determine that the property is "ready for development." Jackson explained that this minimizes the Commission's costs of maintaining the property. Jackson testified that between approximately 2007 and 2011, the Commission spent funds to perform environmental and engineering due-diligence studies on several parcels of property within the Industrial Park, including the two acres at issue. Jackson explained that this project entailed engineers and archeologists performing various surveys and studies on the land, including taking soil samples and determining whether endangered species were on the property. Jackson estimated that the Commission spent approximately $143,000 on the due-diligence studies.

¶32. Jackson also testified about the maintenance of the two acres at issue. In 2015, the Commission harvested pine trees from land in the Industrial Park, including the two acres at issue. In approximately 2018, the Commission spent money to remove the tree stumps and remaining bushes from the property. Jackson testified that after harvesting the pine trees in

2015, the Commission continued to maintain the property by bush-hogging it and performing general maintenance to make sure the land was "presentable" when showing it to companies interested in purchasing the land. Jackson specified that the Commission bush-hogs the property twice a year, and the City of Hattiesburg picks up trash and litter from the property on a weekly basis.

¶33. After our review, and keeping in mind the characteristics of the two acres at issue, we find that the record contains "sufficient evidence of [the Commission's] possessory acts to put any owner of the disputed property on notice of [the Commission's] claim[.]" *Franco*, 342 So. 3d at 1189 (¶31). We also find that the record contains sufficient evidence to support the chancellor's finding that the Commission proved by clear and convincing evidence that its possession of the property was under claim of ownership.

### B. *Actual or Hostile*

¶34. The Appellants next take issue with the chancellor's finding that the Commission proved by clear and convincing evidence that its possession of the two acres at issue was actual or hostile. "Possession is defined as effective control over a definite area of land, evidenced by things visible to the eye or perceptible to the senses." *Roberts v. Young's Creek Inv. Inc.*, 118 So. 3d 665, 670 (¶10) (Miss. Ct. App. 2013). This Court has explained:

> Possession is hostile and adverse when the adverse possessor intends to claim title notwithstanding that the claim is made under a mistaken belief that the land is within the calls of the possessor's deed. The adverse possessor must also possess the property without permission, because permission defeats any claim of adverse possession.

*Id*. (citations and internal quotation marks omitted).

13

¶35. The Appellants specifically argue that the Commission failed to show that its claim of title was "made under a mistaken belief that the land is within the calls of the possessor's deed." *Id*. The Appellants maintain that the Commission "knew since 1978 [that] the two acres in question[] [were] not part of its deed, as eviden[ced] by the 1978 deed and the 1983 survey."[6]

¶36. However, we find that the record does not support this claim. Instead, the evidence and testimony presented at trial establish that the Commission mistakenly believed that it owned the two acres at issue. In 1978, the Hattiesburg Area Development Corporation conveyed a nineteen-acre parcel of real property to the Commission via warranty deed. Although the two acres owned by Carrie and Luther were situated within the nineteen-acre parcel, the 1978 deed specifically excepted these two acres. However, over the next four decades, the Commission consistently filed documents and performed actions that evidence the Commission's (mistaken) belief that it owned the two acres at issue.

¶37. In 1983, the Commission filed a subdivision plat of the Industrial Park in the chancery court. The 1983 subdivision plat included the two acres at issue as property of the Industrial Park. Two years later, the Commission executed a warranty deed conveying an easement to The City of Hattiesburg for laying, constructing, and maintaining a water line in and across

---

[6] In their appellate brief, the Appellants claim that "[a] survey was conducted in 1983 . . . and found that the property in question [was] excepted from" the property deeded to the Commission in 1978. The Appellants cite trial exhibit 1 in support of their claim about a 1983 survey. The Appellants appear to confuse the 1983 subdivision plat, which includes the two acres at issue as part of the property of the Commission, with a more recent survey of the two acres at issue performed by Broome in approximately 2021. At trial, Broome explained that the survey admitted into evidence as trial exhibit 1 was a "recent" survey of the two acres at issue.

14

the nineteen-acre parcel, including the two acres at issue. In 1988, the Industrial Park adopted protective covenants to ensure that companies investing in the Industrial Park adhere to certain aesthetic and zoning standards. The covenants were filed in the chancery court and have been renewed several times, as recently as 2015. The record reflects that the covenants include the two acres at issue.

¶38. In January 2001, the Commission executed a warranty deed conveying eight acres of land to the PRCC. The deed was admitted into evidence at trial, and testimony confirmed that the land conveyed to the PRCC encroached on the two acres at issue. On April 9, 2002, the PRCC executed a special warranty deed conveying the same eight acres back to the Commission.

¶39. Jackson testified at trial that the Commission first discovered that it did not have clear title to the two acres at issue after Broome reviewed the title commitment to the parcel and found that the two acres were excepted from the 1978 deed. Jackson estimated that this discovery occurred in approximately 2021.

¶40. As stated, "both the quality and quantity of possessory acts necessary to establish a claim of adverse possession may vary with the characteristics of the land." *Walker*, 722 So. 2d at 1281 (¶16). Jackson testified that from the inception of the Industrial Park, the Commission intentionally kept the two acres at issue as "raw . . . forested . . . vacant land" until the Commission determined that the land was ready for development. As a result, the Commission did not take any action to make improvements to the property until 2015, when it harvested the pine trees. In cases like the one before us, where the property at issue is

15

generally undeveloped, "the quantum of proof necessary to establish adverse possession over the disputed parcel is measurably lower than had the property been improved or developed." *Scott v. Anderson-Tully Co.*, 154 So. 3d 910, 917 (¶20) (Miss. Ct. App. 2015). "Possession of such undeveloped property may be established by a continued claim evidenced by public acts of ownership." *Id.*

¶41. After our review, we find that the Commission performed "public acts of ownership" sufficient to establish its actual or hostile claim of ownership of the two acres at issue. In addition to filing subdivision plats, easements, and conveyances in the chancery court, the Commission performed various maintenance, surveys, harvesting, and other actions on the two acres at issue that demonstrated its claim on the property. Accordingly, the chancellor did not err in determining that the Commission met its burden of proof as to this element.

### C. Open, Notorious, and Visible

¶42. The Appellants also argue that the Commission's use of two acres at issue was not open, notorious, and visible but, rather, "sporadic possession at best." The Appellants therefore maintain that the Commission's actions were not sufficient to "fly a flag over the property" and put the record owners on notice that their land was held under an adverse possession claim.

¶43. "In addition to the requirements that possession be under a claim of ownership and hostile, possession must also be open, notorious, and visible." *Revette v. Ferguson*, 271 So. 3d 702, 709 (¶19) (Miss. Ct. App. 2018). This Court has explained that "[f]or possession to be open, notorious, and visible, the possessor must unfurl his flag on the land, and keep it

flying, so that the actual owner may see, and if he will, that an enemy has invaded his domains, and planted the standard of conquest." *Anderson-Tully*, 154 So. 3d at 917 (¶21) (internal quotation mark omitted). Again, our determination of whether a party's possessory actions were open, notorious, and visible depends on the characteristics of the property. *Walker*, 722 So. 2d at 1281 (¶16).

¶44. In the case before us, the chancellor found that

> the quality and quantity of the possessory acts by the Commission (e.g. clearing trees, bushhogging, routine maintenance, conducting various studies and surveys, marketing for business development, etc.) as well as other acts by the Commission over the last fifteen or more years are sufficient to establish the acts of open, notorious, and visible as may be expected of a person or entity assuming actual possession over land in the industrial park area where the subject two acres are situated.

After reviewing the record, we agree.

¶45. As stated, the Commission intentionally kept the land in the Industrial Park "raw" and forested until the Commission determined that the land was ready for development. Beginning in 1983 with the Commission's filing of the Industrial Park subdivision plat, the Commission filed various documents, easements, and conveyances that reflected the Commission's ownership of the two acres at issue.

¶46. Jackson testified that since the mid-2000s, the Commission has "continuously" marketed the property in the Industrial Park to try and "attract a large employer to the area." Jackson explained that marketing the property included producing "real-estate flyers on marketing materials that . . . highlight the property and highlight the advantages of it from manufacturing standpoint[.]" Jackson confirmed that the two acres at issue were part of the

17

Commission's marketing efforts "because it was a part of the larger parcel."

¶47. Jackson also testified that between approximately 2007 and 2011, the Commission spent approximately $143,000 in funds to perform environmental and engineering due diligence studies on several parcels of property within the Industrial Park, including the two acres at issue. In 2015, the Commission harvested pine trees from land in the Industrial Park, including the two acres at issue. In approximately 2018, the Commission spent money to remove the tree stumps and remaining bushes from the property. Jackson testified that after harvesting the pine trees in 2015, the Commission maintained the property by bush-hogging it twice a year and performing general maintenance to make sure the property was ready to show to investors. Jackson also testified that the City of Hattiesburg picked up trash and litter from the property on a weekly basis.

¶48. In *Kayser v. Dixon*, 309 So. 2d 526, 529 (Miss. 1975), a case involving adverse possession of timberland, the Mississippi Supreme Court stated that "an important question is whether the person claiming [ownership] adversely exercises toward the land the same character of control applied toward property actually his and which he would not have exercised over property which did not belong to him." It is clear from the record that the Commission exercised "the same character of control" toward the two acres at issue as it did to the property actually deeded to it in 1978. *Id*.; *see also Wicker v. Harvey*, 937 So. 2d 983, 994-95 (¶37) (Miss. Ct. App. 2006). The evidence also shows that the Commission did not "[try] to hide their use of the disputed parcel." *Apperson v. White*, 950 So. 2d 1113, 1118 (¶13) (Miss. Ct. App. 2007).

18

¶49. Keeping in mind the characteristics of the two acres at issue, we find that the chancellor did not err in finding that the Commission's possession of the land was open, notorious, and visible.

### D. Continuous and Uninterrupted for a Period of Ten Years

¶50. Finally, the Appellants argue that the chancellor erred in finding that the Commission established its continuous and uninterrupted possession of the two acres at issue for more than ten years. The Appellants maintain that "there is no ten year continuous and uninterrupted period where the [the Commission] was under the assumed belief that the [two acres at issue] was its property." Rather, the Appellants argue that the Commission's use of the two acres at issue was intermittent and, therefore, insufficient to establish a continuous and uninterrupted presence.

¶51. To satisfy the continuous and uninterrupted element of adverse possession, Mississippi Code Annotated section 15-1-13 requires possession for at least ten years. Here, the record shows that in January 2001, the Commission conveyed eight acres of Industrial Park land to the PRCC. This deed reflects that the land conveyed to the PRCC encroached on the two acres at issue. On April 9, 2002, the PRCC executed a special warranty deed conveying the same eight acres back to the Commission. Evidence presented at trial shows that from the time of the 2002 conveyance until the Commission filed its adverse possession complaint in 2022—well over the ten years required by section 15-1-13—the Commission was in continuous and uninterrupted possession of the two acres at issue.

¶52. After our review, we find that the chancellor did not err in determining that the

19

Commission proved the necessary element of ten years' continuous possession by clear and convincing evidence.

## II. The Appellants' Counterclaims

¶53. Because the evidence in the record supports the chancellor's finding that the Commission proved title to the two acres at issue by adverse possession, we likewise find that the chancellor did not err in dismissing the Appellants' counterclaims for trespass, unlawful withholding possession of the subject property, and unjust enrichment. *See Franco*, 342 So. 3d at 1202 (¶76).

## CONCLUSION

¶54. After our review, we affirm the chancery court's judgment granting title of the two acres at issue to the Commission and dismissing the Appellants' counterclaims.

¶55. **AFFIRMED.**

**BARNES, C.J., LAWRENCE, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR. WILSON, P.J., AND McDONALD, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. ST. PÉ, J., NOT PARTICIPATING.**